UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

FIREFIGHTERS' RETIREMENT
SYSTEM, ET AL                          CIVIL ACTION

VERSUS                                 NUMBER 14-103-SDD-SCR

CONSULTING GROUP SERVICES,
LLC, ET AL

## NOTICE

Please take notice that the attached Magistrate Judge's Report
has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have 14 days
after being served with the attached report to file written
objections to the proposed findings of fact, conclusions of law,
and recommendations set forth therein.  Failure to file written
objections to the proposed findings, conclusions and
recommendations within 14 days after being served will bar you,
except upon grounds of plain error, from attacking on appeal the
unobjected-to proposed factual findings and legal conclusions
accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE
WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, August 25, 2015.

*Stephen C. Riedlinger*

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

FIREFIGHTERS' RETIREMENT
SYSTEM, ET AL                          CIVIL ACTION

VERSUS                                 NUMBER 14-103-SDD-SCR

CONSULTING GROUP SERVICES,
LLC, ET AL

### MAGISTRATE JUDGE'S REPORT

Before the court is a Motion to Remand filed by plaintiffs, the Firefighters' Retirement System, Municipal Employers' Retirement System of Louisiana and New Orleans Firefighters' Pension and Relief Fund (hereafter, "plaintiffs"). Record document number 17. The motion is opposed.[1]

Plaintiffs filed a Petition for Damages in state court against defendants Grant Thornton, LLP, ("Grant Thornton") and Consulting Services Group, LLC ("CSG").[2] In their Petition the plaintiffs alleged claims against Grant Thornton under the following theories

---

[1] Defendants Grant Thornton, LLP and Consulting Services Group, LLC each filed an opposition memorandum. Record document numbers 28 and 29, respectively.

[2] The pleadings establish that Grant Thornton is the United States member of Grant Thornton International Ltd., which is a named defendant in *Firefighters' Retirement System, et al. v. Citco Group Limited, et al.*, CV 13-373-SDD-SCR, and that CSG is also a defendant in CV 13-373-SDD-SCR. Plaintiffs alleged that defendant Grant Thornton and Grant Thornton International are likely solidary obligors, and that the plaintiffs sued Grant Thornton in this case to insure that prescription was interrupted. Plaintiffs did not explain why they named CSG as a defendant in this case when it was already named a defendant in CV 13-373-SDD-SCR.

of liability based on Louisiana state laws: (1) the Louisiana Securities Act; (2) detrimental reliance; (3) negligence and negligent misrepresentation; (4) third party beneficiary; and, (5) the Louisiana Unfair Trade Practices Act. Against CSG, the plaintiffs alleged claims for breach of contract and a violation of the Louisiana Unfair Trade Practices Act. Plaintiffs did not allege claims under federal law against any of the defendants.

Defendant CSG removed the petition to this court based on the following grounds: (1) jurisdiction under 28 U.S.C. § 1334(b), which provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11"; and (2) diversity jurisdiction under 28 U.S.C. § 1332(a).[3] Defendant Grant Thornton consented to the removal.[4]

With regard to jurisdiction under § 1334(b), the defendant alleged in its Notice of Removal that this case is related to three separate bankruptcy cases, all of which are pending in the United States Bankruptcy Court for the Southern District of New York: In re Fletcher International, Ltd., Case No. 12-12796 ("FIL Bankruptcy"); In re FIA Leveraged Fund (In Liquidation), Case No. 14-10093 ("Leveraged Bankruptcy"); In re Fletcher Income Arbitrage

---

[3] The removal statutes that correspond to these grants of federal jurisdiction are 28 U.S.C. §§ 1441(a) and 1452(a).

[4] Record document number 15, Notice of Consent to Removal by Grant Thornton.

Fund Ltd. (In Liquidation), Case No. 14-10094 ("Arbitrage Bankruptcy"). The FIL Bankruptcy is proceeding under Chapter 11, while the Leveraged Bankruptcy and Arbitrage Bankruptcy are proceeding under Chapter 15.[5]

Defendant also alleged that removable is based on diversity jurisdiction. According to the defendant, the plaintiff retirement funds are Louisiana citizens, none of the defendants' members or partners are Louisiana citizens, and the jurisdictional amount is satisfied.[6]

Plaintiffs moved to remand based on a lack of subject matter jurisdiction, and alternatively, based on mandatory and permissive abstention under 28 U.S.C. § 1334(c)(1) and (2) for actions related to bankruptcy cases.

Based on the applicable law, the analysis previously done in two related cases,[7] and the analysis that follows, the plaintiffs'

---

[5] Defendants noted in their Notice of Removal that a Chapter 15 case is ancillary to a primary proceeding brought in another country and is commenced by a foreign representative filing a petition for recognition of a foreign proceeding in the United States.

[6] Record document number 1, Notice of Removal, ¶¶ 19-23.

[7] To avoid unnecessary repetition this report cites to, incorporates or relies on the statement of the background facts, arguments and analysis presented in the Magistrate Judge's Report issued in two other related cases, *Firefighters' Retirement System, et al. v. Citco Group Limited, et al.*, CV 13-373-SDD-SCR, and *Firefighters' Retirement System, et al. v. Eisneramper, LLP, et al.*, CV 14-182-SDD-SCR. For the convenience of the reader, those reports are attached as Attachment 1 and Attachment 2,

(continued...)

Motion to Remand should be denied.

## Background

This case arises out of the same facts and circumstances presented in *Firefighters' Retirement System, et al. v. Citco Group Limited, et al.*, CV 13-373-SDD-SCR. The background facts set forth in the Magistrate Judge's Report issued in CV 13-373-SDD-SCR will not be repeated and are incorporated by reference in this report.[8] The following summary includes only information pertinent to the plaintiffs' allegations against Grant Thornton and CSG.

Plaintiffs alleged that Grant Thornton was retained as an independent auditor of Leveraged and prepared initial and restated audits for the years ending in December 31, 2007 and December 31, 2008. Plaintiffs alleged that Grant Thornton negligently failed to inform plaintiffs of material facts related to fraud and conflicts of interest on the part of Leveraged that resulted in the plaintiffs losing their $100 million investment in the Series N Shares issued by Leveraged. Plaintiffs claimed that Grant Thornton prepared Initial Statements and Restated Financial Statements and omitted material facts that would have caused the plaintiffs not to

---

[7](...continued)
respectively. As noted below, the court's decision to remand *Firefighters' Retirement System, et al. v. Citco Group Limited, et al.* was reversed on appeal as to the issue of permissive abstention/remand.

[8] CV 13-373-SDD-SCR, record document number 204.

invest in Leveraged and Arbitage. Plaintiffs asserted that the restated audits contained misleading information that prevented the plaintiffs from exercising their redemption rights. Thus, as a result of Grant Thornton's breach of obligations and duties owed to the plaintiffs and its violations of Louisiana law, the plaintiffs suffered the loss of their $100 million investment and other economic damages.

Plaintiffs asserted that CSG is also liable for these damages. Plaintiffs alleged that CSG was hired as an investment advisor to counsel them with regard to their investment in Leveraged. However, plaintiffs claimed that during the period of its contract with the plaintiffs CSG had an undisclosed agreement with Citco Group Limited and Alphonse "Buddy" Fletcher, Jr. whereby CSG received compensation from them for each period that the plaintiffs did not redeem their shares. Plaintiffs alleged that CSG's actions constituted breach of contract and a violation of Louisiana's law prohibiting unfair trade practices.

## Applicable Law

### General Principles

The removing party bears the burden of establishing federal jurisdiction over a state court suit. *Carpenter v. Wichita Falls Independent School Dist.*, 44 F.3d 362, 365 (5th Cir. 1995). As with removal under the general provision of § 1441(a), the existence of subject matter jurisdiction is determined as of the

time of removal. *In re Bissonnet Investments* LLC, 320 F.3d 520, 525 (5th Cir. 2003); In *re Legal Xtranet, Inc.*, 453 B.R. 699, 703-04 (W.D.Tex. 2011). Thus, if "related to" jurisdiction exists at the time of removal, subsequent events do not divest the district court of subject matter jurisdiction. *In re Enron Corp. Securities*, 535 F.3d 325, 336 (5th Cir. 2008). Generally, the "well-pleaded complaint" rule applies only to statutory "arising under" cases. *American National Red Cross v. S.G.,* 505 U.S. 247, 258, 112 S.Ct. 2465 (1992). Therefore, the "well-pleaded complaint" rule is used to determine whether there is "arising under" jurisdiction in bankruptcy, but it is not applicable in "related to" bankruptcy removal cases. *In re Enron Corp. Securities, Derivative & ERISA Litigation*, 511 F.Supp.2d 742, 764 (S.D.Tex. 2005); *In re Brooks Mays Music Co.,* 363 B.R. 801, 814-15 (N.D.Tex. 2007).

**Contractual Waiver of Right to Remove**

For a contractual clause to prevent a party from exercising its right to removal, the clause must be a clear and unequivocal waiver of that right. *City of New Orleans v. Municipal Admin. Services*, 376 F.3d 501, 504 (5th Cir. 2004). The waiver, however, is not required to contain explicit words such as "waiver of right of removal." *Waters*, *supra*; *Dixon v. TSE Intern. Inc.*, 330 F.3d 396 (5th Cir. 2003)(per curiam). A party may waive its removal

rights by explicitly stating that it is doing so, by allowing the other party the right to choose venue[9] or by establishing an exclusive venue within the contract. A party's consent to jurisdiction in one forum does not necessarily waive its right to have an action heard in another. Thus, for a forum selection clause to be exclusive it must go beyond establishing that a certain forum will have jurisdiction and must clearly demonstrate the intent to make that jurisdiction exclusive. *City of New Orleans*, *supra*.

The principles of contract interpretation under Louisiana law are well-established. Interpretation of a contract is the determination of the intent of the parties. Except for technical terms, the words of a contract must be given their generally prevailing meaning. Each provision must be read in light of the others so that each is given the meaning suggested by the contract as a whole. If the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and the agreement must be enforced as written. Louisiana Civil Code Articles 2045, 2046, 2047, 2050. *Taita Chemical Co. Ltd. v. Westlake Styrene Corp.*, 246 F.3d 377, 386 (5th Cir. 2001). A contract is ambiguous if, after

---

[9] A party to a contract may waive the right to remove a case provided the provision of the contract makes clear that the other party to the contract has the right to choose the forum in which any dispute will be heard. *Waters v. Browning-Ferris Industries, Inc.*, 252 F.3d 796, 797 (5th Cir. 2001).

applying the rules of contract interpretation, the contract is uncertain as to the parties' intent and susceptible to more than one reasonable interpretation under the circumstances. *Riverwood Intern. Corp. v. Employers Ins. of Wausau*, 420 F.3d 378, 382 (5th Cir. 2005).

Under Louisiana law, waiver is defined as the intentional relinquishment of a known right, power or privilege. *Taita Chemical*, 246 F.3d at 388, citing, *Steptore v. Masco Constr. Co.*, 93-2064 (La. 8/18/94), 643 So.2d 1213, 1216. Waiver requires that there first be an existing right and that a party have knowledge of that right's existence. A party may then waive that right through either an actual intention to relinquish it, or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished. *Id.; Legier and Materne v. Great Plains Software, Inc.*, 2005 WL 1431666 (E.D. La. May 31, 2005).

### Subject Matter Jurisdiction Under 28 U.S.C. § 1332

Since the enactment of the diversity statute, it has been interpreted to require complete diversity of citizenship. *Carden v. Arkoma Associates,* 494 U.S. 185, 110 S.Ct. 1015, 1017 (1990). In *Carden*, the Supreme Court held that a federal court must look to the citizenship of each member of a partnership - both its limited and general partners - to determine whether there is complete

diversity.  *Id.,* at 1021.

Under the diversity statute, § 1332(a), state citizenship is synonymous with domicile.  For this reason, a United States citizen who is domiciled abroad is not a citizen of any state of the United States, and cannot sue or be sued in federal court on the basis of diversity jurisdiction.  *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996).

A United States citizen who is domiciled in a state is a citizen of that state.  Therefore, generally state citizenship for diversity purposes is considered synonymous with domicile.  *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996); *Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 555 (5th Cir. 1985).  While state law may be consulted for guidance, the question of a person's domicile is a matter of federal common law. *Coury*, *supra.*

The definition of domicile is more than a century old: "residence at a particular place accompanied with positive or presumptive proof of an intention to remain there for an unlimited time." *Mitchell v. United States*, 88 U.S. 350, 352, 22 L.Ed. 584 (1874).  A person's domicile persists until a new one is acquired or it is clearly abandoned; therefore, a change in domicile generally requires the concurrence of physical presence at the new location and an intention to remain there indefinitely.  *Coury*, 85

F.3d at 250.[10]

> Residence in fact, and the intention of making the place of residence one's home, are essential elements of domicile. Words may be evidence of a man's intention to establish his domicile at a particular place of residence, but they cannot supply the fact of his domicile there. In such circumstances, the actual fact of residence and a real intention of remaining there, as disclosed by his entire course of conduct, are the controlling factors in ascertaining his domicile.

*Freeman*, 754 F.2d at 555-56, *citing*, *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954).

Because domicile is evaluated in terms of objective facts, a litigant's statement of intent is relevant to the determination of domicile, but it is entitled to little weight when it conflicts with the objective facts. *Coury*, 85 F.3d at 251. The court should look to all evidence which sheds light on the litigant's intention to establish domicile, including a variety of factors such as the places where the party exercises civil and political rights, pays taxes, owns real and personal property, holds driver's and other licenses, has bank accounts, places of business or employment, belongs to churches and other organizations, and maintains a home for his family. No single factor is determinative. *Id.; Computer People, Inc. v. Computer Dimensions International, Inc.*, 638

---

[10] There is no particular time period required for residency in the establishment of domicile. Once presence in the state and intent to remain there are met, the new domicile is instantaneously established. *See*, *Acridge v. Evangelical Lutheran Good Samaritan Soc.*, 334 F.3d 444, 448 (5th Cir. 2003).

F.Supp. 1293, 1295 (M.D.La. 1986).

Diversity must exist at the time the action is commenced.  In cases removed from state court, diversity of citizenship must exist both at the time of filing in state court and at the time of removal to federal court.  *Coury*, 85 F.3d at 248-49.  In determining a party's domicile, the court is not limited to the pleadings.  It may look to any evidence in the record, and may receive affidavits, depositions or live testimony concerning the facts underlying the citizenship of the party.  The ultimate burden on the issue of jurisdiction lies with the party invoking federal jurisdiction.  *Id.*, at 249-50.

A state is not a citizen of any state for purposes of diversity jurisdiction.  *Moor v. County of Alameda*, 411 U.S. 693, 717, 93 S.Ct. 1785, 1796-97 (1973).  This rule also applies if a suit is brought against an agency that is the alter ego or arm of the state – federal jurisdiction is lacking. *PYCA Industries, Inc. v. Harrison County Waste Water Management,* 81 F.3d 1412, 1416 (5th Cir. 1996), citing, *Tradigrain, Inc. v. Mississippi State Port Authority,* 701 F.2d 1131 (5th Cir. 1983).  However, if the agency is an independent one, separate and distinct from the state, the district court can properly assert jurisdiction over the case.  *Id.*

If the agency's status is unclear the court looks to all available sources for guidance.  The fact that the enabling

legislation describes it as a political subdivision does not make its status clear. A state statute characterizing the agency as an arm of the state is only one factor to consider in the balancing test. *PYCA Industries, Inc.*, 81 F.3d at 1416, citing, *McDonald v. Board of Mississippi Levee Comm'rs*, 832 F.2d 901, 906 (5th Cir.1987).[11] As was explained in *Tradigrain*, there are many factors to consider in determining whether an agency is the alter ego of the state, including: (1) whether state statutes and case law characterize the agency as an arm of the state; (2) the source of entity funding; (3) the degree of local autonomy; (4) whether the entity is concerned primarily with local, as opposed to statewide, problems; (5) the authority to sue and be sued in its own name; and, (6) the right to hold and use property. Typically, some factors will suggest that the agency is a citizen, while others will suggest that it is the alter ego of the state. *Id.*

### Subject Matter Jurisdiction Under 28 U.S.C. § 1334

Under 28 U.S.C. § 1334(a) the district court has original and exclusive jurisdiction over all cases under Title 11. Under § 1334(b) the district courts have original but not exclusive

---

[11] The *McDonald* factors are technically a test for Eleventh Amendment immunity. However, the analysis of an agency's status is virtually identical whether the case involves determination of immunity under the Eleventh Amendment or a determination of citizenship for diversity jurisdiction. *Tradigrain*, 701 F.2d at 1132.

jurisdiction over all civil proceedings arising under Title 11 or arising in or related to cases under Title 11. Thus, § 1334 provides jurisdiction in four types of matters: (1) cases under Title 11; (2) civil proceedings arising under Title 11; (3) civil proceedings arising in cases under Title 11; and (4) civil proceedings related to cases under Title 11. *In re Matter of Wood*, 825 F.2d 90, 92 (5th Cir. 1987). The phrase "under Title 11" refers to the bankruptcy proceeding itself. The phrase "arising under Title 11, or arising in or related to cases under Title 11" identifies, collectively, a broad range of matters subject to bankruptcy jurisdiction. The phrase "arising under Title 11" defines proceedings that involve a cause of action created or determined by a statutory provision of Title 11. The terms "arising in...cases under Title 11" refers to administrative matters that arise only in bankruptcy cases. *Id.*

"Related to" is a term of art. *In re Canion,* 196 F.3d 579, 585 (5th Cir. 1999). To determine whether a matter falls within general "related to" jurisdiction, it is necessary only to determine whether a matter is at least related to the bankruptcy. *In re Bass,* 171 F.3d 1016, 1022-23 (5th Cir. 1999).[12] Matters

---

[12] For purposes of determining whether a particular matter falls within bankruptcy jurisdiction, it is not necessary to distinguish between proceedings arising under, arising in a case under, or related to a case under title 11. It is necessary only
(continued...)

"related to cases under Title 11," refers to a much broader category of proceedings. For purposes of bankruptcy jurisdiction, the phrase has a causal component. For bankruptcy jurisdiction to exist based on a case being related to a case under Title 11, the proceeding must be capable of causing an effect on a bankruptcy estate. *Id.* Thus, "a proceeding is related to a bankruptcy if the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." State another way, an action is related to a bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts the handling and administration of the debtor's estate. *Id.; In re Walker*, 51 F.3d 562, 569 (5th Cir. 1995); *In re TMT Procurement Corp.,* 764 F.3d 512, 526 (5th Cir. 2014). For jurisdiction to exist, the anticipated outcome of the action must both alter the rights, obligations, and choices of action of the debtor, and have an effect on the administration of the estate. *Id.* The law is well established that when testing "related to" jurisdiction, an effect is not required to be certain. Certainty, or even likelihood, of such an effect is not a requirement. Rather, jurisdiction will exist based on a finding of any conceivable effect. *In re Canion,*

[12](...continued)
to determine whether a matter is at least related to the bankruptcy. *Matter of Wood*, 825 F.2d at 93.

196 F.3d at 587.

The exercise of jurisdiction over cases related to bankruptcy cases is primarily intended to encompass tort, contract, and other legal claims by and against the debtor, claims that, were it not for bankruptcy, would be ordinary stand-alone lawsuits between the debtor and others but which § 1334(b) allows to be forced into bankruptcy court so that all claims by and against the debtor can be determined in the same forum. *In re Zale Corporation*, 62 F.3d 746, 751 (5th Cir. 1995). Another purpose is to force into the bankruptcy court those suits to which the debtor need not be a party but which may affect the amount of property in the debtor's estate. *Id.* at 752.

Nevertheless, "related to" jurisdiction is not limitless. "[A]s a dispute becomes progressively more remote from the concerns of the body of federal law claimed to confer jurisdiction over it, the federal interest in furnishing the rule of decision for the dispute becomes progressively weaker." *Id.; Zerand-Bernal Group, Inc. v. Cox*, 23 F.3d 159, 162 (7th Cir. 1994). Those cases in which the exercise of "related to" jurisdiction over third-party actions is upheld do so because the subject of the third-party dispute was property of the estate or because the dispute over the asset would have an effect on the estate. *In re Zale,* 62 F.3d at

753.[13]  Shared facts between the third-party action and a debtor-creditor conflict do not, in and of themselves, suffice to make the third-party action related to the bankruptcy.  Judicial economy alone also does not justify the exercise of "related to" jurisdiction over an otherwise unrelated suit.  It is the relationship of the dispute to the estate, and not the party to the estate, that establishes jurisdiction.  *In re Zale,* 62 F.3d at 753-755.

### Mandatory and Permissive Abstention

If the court has jurisdiction under § 1334(b) the next issue that must be addressed is abstention - permissive abstention under 28 U.S.C. § 1334(c)(1) and mandatory abstention under § 1334(c)(2).

Mandatory abstention is based on § 1334(c)(2), which provides as follows:

---

[13] *See*, *In re Canion*, *supra*, citing, *Owens Illinois, Inc. v. Rapid American Corp ( In re Celotex Corp.)*, 124 F.3d 619, 626 (4th Cir.1997) (finding "related to" jurisdiction when a creditor's claim against a non-debtor would reduce its claim in bankruptcy); *Kaonohi Ohana, Ltd. v. Sutherland*, 873 F.2d 1302, 1306-07 (9th Cir. 1989) (upholding "related to" jurisdiction over third-party action as specific performance remedy in third-party action would reduce damages in breach of contract claim against bankruptcy estate); *National Union Fire Ins. Co. v. Titan Energy, Inc.*, 837 F.2d 325, 329 (8th Cir. 1988) (holding that a coverage dispute between the debtor's insurance company and a creditor was "related to" the bankruptcy as a finding of coverage would reduce the claims against the estate); *Carr v. Michigan Real Estate Ins. Trust (In re Michigan Real Estate Trust)*, 87 B.R. 447 (E.D.Mich. 1988).

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

The Fifth Circuit has interpreted this provision to mandate federal court abstention where: (1) the claim has no independent basis for federal jurisdiction, other than § 1334(b); (2) the claim is a non-core proceeding; (3) an action has been commenced in state court; and (4) the action could be adjudicated timely in state court. *Schuster v. Mims (In re Rupp & Bowman)*, 109 F.3d 237, 239 (5th Cir.1997); *In re TXNB Internal Case*,483 F.3d 292, 300 (5th Cir. 2007); *In re Southmark Corp.,* 163 F.3d 925, 929 n.2 (5th Cir.), *cert denied*, 527 U.S. 1004, 119 S.Ct. 2339 (1999).

Permissive abstention is based on § 1334(c)(1), which provides as follows:

> Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

Thus, the court in its discretion may abstain from deciding either core or noncore proceedings under § 1334(c)(1), if the interests of justice, comity or respect for state law so require. *Matter of Gober*, 100 F.3d 1195, 1206 (5th Cir. 1996). This permissive abstention provision is implemented in conjunction with

17

the bankruptcy jurisdiction removal statute, which provides that "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground."  28 U.S.C. § 1452(b).

The Fifth Circuit listed eight considerations for equitable remand in *Brown v. Navarro,* 743 F.2d 1069, 1076 fn. 21 (5th Cir. 1984).  They are: (1) forum non conveniens; (2) if the civil action has been bifurcated by removal, the entire action should be tried in the same court; (3) whether a state court is better able to respond to questions involving state law; (4) the expertise of a particular court; (5) duplicative and uneconomic effort of judicial resources in two forums; (6) prejudice to the involuntarily removed parties; (7) comity considerations; and, (8) a lessened possibility of an inconsistent result.  *Id.; In re Johnson,* 506 B.R. 233, 241 (M.D.La.,2014).

When the issue is equitable remand and the appropriateness of permissive abstention under § 1334(c)(1), some district and bankruptcy courts cite these eight factors, others cite a list of 14 factors which include the requirements for mandatory abstention, and some cite both sets of factors.  The 14 factors are: (1) the effect or lack thereof on the efficient administration of the estate if the court decides to remand or abstain; (2) extent to which state law issues predominate over bankruptcy issues; (3) difficult or unsettled nature of applicable law; (4) presence of

related proceeding commenced in state court or other non-bankruptcy proceeding; (5) jurisdictional basis, if any, other than § 1334; (6) degree of relatedness or remoteness of proceeding to main bankruptcy case; (7) the substance rather than the form of an asserted core proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of the court's docket; (10) the likelihood that the commencement of the proceeding in the [district] court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; (12) the presence in the proceeding of non-debtor parties; (13) comity; and, (14) the possibility of prejudice to other parties in the action. *Regal Row Fina, Inc. v. Washington Mutual Bank*, 2004 WL 2826817, 8-9 (N.D.Tex., Dec. 9, 2004, N.D.Tex.); *In re Ballard*, 2012 WL 4162382 (Bkrtcy. S.D.Tex., Sept. 19, 2012); Sonnier v. Hesco Bastion USA, LLC, 2013 WL 5350853 (M.D.La., Sept. 23, 2013); *In re J. Moss Investments,* Inc., 2012 WL 2150346 Bkrtcy. S.D.Tex., 2012); In *re Trimjoist Corp.*, 2013 WL 3934368 (Bkrtcy. N.D.Miss., July 30, 2013).

The Fifth Circuit held in *Firefighters' Retirement System v. Citco Group Ltd.,* that a district court may not permissively abstain from exercising jurisdiction in proceedings related to Chapter 15 bankruptcy cases. Furthermore, §§ 1334(c)(1) and 1452(b) must be read *in pari materia* and the result is that this

prohibition against abstention also applies to bar equitable remand.

**Costs and Expenses under 28 U.S.C. § 1447**

Plaintiffs also requested an award of cost and actual expenses including attorney's fees under 28 U.S.C. § 1447(c).

There is no automatic entitlement to an award of attorney fees under § 1447(c).  The clear language of the statute, which provides that the "order remanding the case may require payment of just costs and any actual expenses including attorney fees, incurred as a result of the removal," makes such an award discretionary.  The Supreme Court set forth the standard for awarding fees under § 1447(c) in *Martin v. Franklin Capital Corporation*, 546 U.S. 132, 126 S.Ct. 704 (2005):

> [T]he standard for awarding fees should turn on the reasonableness of the removal.  Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied.  *See*, *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 541 (5th Cir. 2004); *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 293 (5th Cir. 2000).  In applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case.  For instance, a plaintiff's delay in seeking remand or failure to disclose facts necessary to determine jurisdiction may affect the decision to award attorney's fees.  When a court exercises its discretion in this manner, however, its reasons for departing from the general rule should be "faithful to the purposes" of awarding fees under § 1447(c).

*Id.*, at 711.

The court must consider the propriety of the removing party's actions at the time of removal, based on an objective view of the legal and factual elements in each particular case, irrespective of the fact that it was ultimately determined that removal was improper. *Id.*; *Miranti v. Lee*, 3 F.3d 925, 928 (5th Cir. 1993); *Avitts v. Amoco Production Co.*, 111 F.3d 30, 32 (5th Cir.), *cert. denied*, 522 U.S. 977, 118 S.Ct. 435 (1997).

## Parties' Arguments and Analysis

### Alleged Defect in Removal - Lack of Unanimous Consent

The initial issue that must be addressed is the plaintiffs' argument that remand is required because the rule of unanimity applies to removals based on bankruptcy jurisdiction, and unanimous consent is lacking in this case. Plaintiffs' argument is premised on its claim that CSG could not validly consent to removal because it waived the right to remove in its contract with the Firefighters' Retirement System. In other words, the plaintiffs' argument is that when a party waives the right to remove and then consents to a removal, the consent is invalid. Acknowledging that the Fifth Circuit has not addressed the issue of unanimity in bankruptcy removals, in support of their position the plaintiffs relied on an Eastern District of Louisiana unpublished decision, *In re Fee Agreement Between Huey & Fong Trust and Kenneth Huey*.[14]

---

[14] 2010 WL 3303830, *8 (E.D.La. Aug. 18, 2010).

Defendants maintained that unanimous consent is not required to remove a case under § 1452(a) because, unlike § 1446(a) which provides that only "[a] defendant or defendants" may remove, § 1452(a) states that "[a] party may remove any claim or cause of action" if the district court has jurisdiction under § 1334. Defendants argued that the decisions from other circuits and district courts which adopt the view that unanimity is not required to remove under § 1452(a) are persuasive.[15] Defendants argued in the alternative that the consent to removal of this case is unanimous because CSG did not contractually waive its right to remove, and therefore its consent to removal is valid.

Plaintiffs relied on the same argument they made in their Motion to Remand filed in CV 13-373-SDD-SCR.[16] Plaintiff's argument was rejected in that case, and the plaintiffs did not rely on any new information or arguments to support their argument in this case. For the reasons explained in the Magistrate Judge's Report issued in CV 13-373-SDD-SCR, the plaintiff's argument should be rejected again.[17]

**Diversity Jurisdiction under § 1332(a)**

The issues that must be addressed with regard to whether the

[15] Record document number 29, Consulting Services Group LLC's Opposition to Plaintiffs' Motion to Remand, pp. 14-17.

[16] Record document number 17-2, supporting memorandum, p. 13.

[17] CV 13-373-SDD-SCR, record document number 204, pp. 26-30.

court has diversity jurisdiction are the citizenship of Grant Thornton's partners, and whether FRS and MERS are arms of the state. The record demonstrates that the court has subject matter jurisdiction in this case based on diversity.

## Citizenship of Grant Thornton Partners

In the Notice of Removal, CSG alleged that defendant Grant Thornton is a Illinois limited liability partnership, and none of its partners are Louisiana citizens.[18] In its Notice of Consent to Removal by Grant Thornton the defendant asserted that it has no "stateless" partners, i.e. partners domiciled in a foreign country.[19] Defendant explained that it has four partners who are temporarily working outside of the United States, on what is referred to as as "secondment," and each partner will return to the United States when his secondment ends.

Plaintiff characterized this assertion by defendant Grant Thornton as self-serving and argued that it has not verified this assertion with an affidavit or otherwise.

With its opposition memorandum, defendant Grant Thornton provided declarations under oath pursuant to 28 U.S.C. § 1764 from the four partners. Each partner confirmed his United States citizenship and residence in a state other than Louisiana,

---

[18] Record document number 1, p. 8, ¶ 23.

[19] Record document number 15, p. 2.

described the terms of his secondment, and stated his intention to not remain in the country where he is working after his secondment ends.[20]  Without the intention to remain there indefinitely an essential element of domicile is lacking.[21]

Plaintiffs did not provide an affidavit, declaration, or other reliable information to contest defendant Grant Thornton's partners' declarations.  Therefore, the present record establishes that defendant Grant Thonrton does not have any partners domiciled abroad that would preclude the existence of diversity jurisdiction in this case.

### Louisiana Funds Status as Arms of the State

Plaintiffs did not argue that NOFPF, the New Orleans pension fund, is an arm of the state.  However, the plaintiffs maintained that the *Tradigrain* analysis should result in finding that MERS and FRS are arms of the state, and therefore are not citizens of any state for purposes of diversity jurisdiction.[22]  Defendants Grant

---

[20] Record document number 28-1, Exhibit 1, Declaration of Mike Creasy Pursuant to 28 U.S.C. § 1746, Declaration of Joseph Loretto Pursuant to 28 U.S.C. § 1746, Declaration of Daniel A. Powers Pursuant to 28 U.S.C. § 1746, Declaration of Edward E. Neusbaum Pursuant to 28 U.S.C. § 1746. The states where these partners reside are New York, Texas, Missouri and Illinois.

[21] Establishing domicile requires both physical presence and the intention to remain at the location indefinitely.  *Freeman, supra.*

[22] Record document number 17-2, supporting memorandum, pp. 14-15.

Thornton and CSG argued that the analysis leads to the opposition conclusion: that MERS and FRS are not arms of the state.[23]

The same issue was addressed in *Firefighters' Retirement System v. Eisneramper, LLP,* CV 14-182-SDD-SCR. The Magistrate Judge's Report issued in that case concluded that the *Tradigrain* analysis supports finding that MERS and FRS are not arms of the state.[24] Plaintiffs offered no new facts or arguments to support a different finding in this case. For the reasons stated in the Magistrate Judge's Report issued in CV 14-182-SDD-SCR, defendants Grant Thornton and CSG have shown that MERS and FRS are separate and independent entities, distinct from the state, and neither should be considered an arm of the state for the purpose of determining jurisdiction.

### Subject Matter Jurisdiction under § 1334(b)

Plaintiffs argued that this case is not sufficiently related to any bankruptcy proceeding such that the court can exercise jurisdiction under § 1334(b).[25] Defendants argued that the circumstances of this case easily satisfy the broad standard of "any conceivable effect" on the estate being administered in

---

[23] Record document number 28, Grant Thornton opposition memorandum, pp. 9-11; record document number 29, CSC opposition memorandum, pp. 6-12.

[24] CV 14-182-SDD-SCR, record document number 12, pp. 19-27.

[25] Record document number 17-2, supporting memorandum, pp. 9-12.

bankruptcy.[26]

Essentially these same arguments were considered in both of other two *Firefighters'* cases. In both cases the Magistrate Judge's Report concluded that the defendants' arguments were convincing.[27] If the outcome of this case is that the plaintiffs succeed in fully or partially recovering their multi-million dollar investment loss, this recovery would reduce the amount they claim from Fletcher International, Ltd./Debtor and thereby potentially benefit other creditors. This conceivable effect is sufficient to establish related-to jurisdiction under § 1334(b).

In summary, the defendants demonstrated that the outcome of this proceeding could conceivably have an effect the liabilities of Fletcher International, Ltd./Debtor and the administration of the bankruptcy estate. Therefore, the defendants met their burden of establishing that subject matter jurisdiction existed at the time of removal based on § 1334(b).

**Abstention**

The court must now turn to address whether mandatory or permissive abstention is appropriate in the circumstances of this case.

---

[26] Record document number 28, Grant Thornton opposition memorandum, pp. 13-18; record document number 29, CSC opposition memorandum, pp. 19-22.

[27] CV 13-373-SDD-SCR, record document number 204, pp. 30-39; CV 14-182-SDD-SCR, record document number 12, pp. 27-33.

### Mandatory Abstention

A party seeking mandatory abstention under § 1334(c)(2) bears the burden of establishing the following: (1) the claim has no independent basis for federal jurisdiction other than § 1334(b); (2) the claim is a non-core proceeding, i.e., it is related to a case under title 11, but does not arise under or in a case under title 11; (3) an action has been commenced in state court; and, (4) the action could be adjudicated timely in state court. *In re TXNB Internal Case*, *supra*; *In re Doctors Hosp. 1997, L.P.,* 351 B.R. 813, 846-847 (S.D.Tex. 2006).

This issue was previously raised and addressed in both of the other *Firefighters'* cases. Plaintiffs relied on the same arguments previously made.[28] In both case, the Magistrate Judge's Report concluded that the plaintiffs failed to show that mandatory abstention applied, albeit for different reasons.[29] However, the basis for rejecting the plaintiffs' arguments in CV 14-182-SDD-SCR fits this case well because in this case, as in that case, there is an independent basis for federal jurisdiction other than § 1334(b) - diversity jurisdiction.[30] Because this action could have been

---

[28] Record document number 17-2, supporting memorandum, pp. 12-13.

[29] CV 13-373-SDD-SCR, record document number 204, pp. 39-47; CV 14-182-SDD-SCR, record document number 12, pp. 33-34.

[30] Plaintiffs' inability to establish this first requirement for mandatory abstention under § 1334(c)(2) makes it unnecessary to
(continued...)

commenced in federal court on the basis of diversity jurisdiction, mandatory abstention is not available.

### Permissive Abstention

The final issue is whether the court should exercise its discretion to abstain and remand under § 1334(c)(1) and § 1452(b).

Again, this issue was addressed in both of the other *Firefighters'* cases. In its substituted opinion issued in *Firefighters' Retirement System v. Citco Group Ltd.* on August 6, 2015, the appellate court held that "the district court cannot permissively abstain from exercising jurisdiction in a proceeding related to Chapter 15 cases."[31] Under 28 U.S.C. § 1334(c)(1) the district court is prohibited from permissively abstaining and equitably remanding such an action to state court.

Applying the holding in the Fifth Circuit's decision in *Firefighters' Retirement System v. Citco Group Ltd.*, the Magistrate Judge's Report issued in CV 14-182-SDD-SCR concluded that this court has no discretion to permissively abstain and remand that case to the state court.[32] Based on the reasons explained in the section of this report addressing the existence of related-to Chapter 11 bankruptcy jurisdiction, the Fifth Circuit's decision in

---

[30](...continued)
address the other factors.

[31] 2015 WL 4666010 *5, n 7.

[32] CV 14-182-SDD-SCR, record document number 12, pp. 34-35.

*Firefighters' Retirement System v. Citco Group Ltd.*, and the provisions of the Confirmation Order and Plan in the Chapter 11 case, it is apparent that this case is related to the Chapter 15 bankruptcy proceedings of the Leveraged Fund and the Arbitrage Fund. Therefore, the decision in *Firefighters' Retirement System v. Citco Group Ltd.* is binding and controls the resolution of the permissive abstention issue. The court has no discretion to abstain and equitably remand this case to the state court.

**Costs and Expenses under 28 U.S.C. § 1447**

Plaintiffs moved for an award of attorney's fees and costs under 28 U.S.C. § 1447(c). Plaintiffs have not established that the court lacks subject matter jurisdiction based on the diversity statute, or § 1334(b). Therefore, there is no basis under § 1447(c) to award the plaintiffs any fees or expenses incurred as a result of the removal.

<u>**RECOMMENDATION**</u>

It is the recommendation of the magistrate judge that the Motion to Remand filed by the plaintiffs be denied.

Baton Rouge, Louisiana, August 25, 2015.

*[signature]*

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

ATTACHMENT 1

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


FIREFIGHTERS' RETIREMENT
SYSTEM, ET AL                          CIVIL ACTION

VERSUS                                 NUMBER 13-373-SDD-SCR

CITCO GROUP LIMITED, ET AL


<u>**NOTICE**</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, June 17, 2014.


STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

FIREFIGHTERS' RETIREMENT
SYSTEM, ET AL                          CIVIL ACTION

VERSUS                                 NUMBER 13-373-SDD-SCR

CITCO GROUP LIMITED, ET AL

<u>**MAGISTRATE JUDGE'S REPORT**</u>

Before the court is a Motion to Remand filed by plaintiffs, the Firefighters' Retirement System, Municipal Employers' Retirement System of Louisiana and New Orleans Firefighters' Pension and Relief Fund (hereafter, "plaintiffs"). Record document number 60. The motion is opposed.[1]

Plaintiffs filed a Petition for Damages in state court, then a First Amendment to Petition for Damages, and then a Second Amendment to Petition for Damages (collectively, "Petition"), against a total of 23 defendants:  (1) Citgo Group Limited, (2) Citco Fund Services (Cayman Islands) Limited, (3) Citco Fund Services (Suisse) S.A., (4) Citco Banking Corporation, N.V., (5) Citco N.V., (6) Citco Fund Services (Europe) BV, (7) Citco (Canada), Inc., (8) Citco Technology Management, Inc., (9) Citco USA, (10) Citco Bank Nederland, N.V. Dublin Branch, (11) Citco

---

[1] Plaintiffs' filed several memoranda in support of the Motion to Remand.  Record document numbers 60-2, 153 and 200.  Defendants filed six opposition memoranda.  Record document numbers 88, 113, 149, 160, 195-2 and 203.

Global Custody N.V., (12) Citco Fund Services (Bermuda) Limited, ("Citco defendants"), (13) Fletcher Asset Management, Inc., (14) Alphonse "Buddy" Fletcher, Jr., (15) Denis Kiely, (16) Duhallow Financial Services, LLC, (17) Lisa Alexander, (18) Peter M. Zayfert, ("Fletcher defendants"), (19) Consulting Services Group, LLC, (20) Joe Meals, (Investment Advisor defendants), (21) Grant Thornton International, Ltd., (22) Non-Series N Shareholders, and (23) Skadden, Arps, Slate, Meagher & Flom, LLP ("Skadden").

Four defendants removed the Petition to this court: Citco Technology Management, Inc., Peter Zayfert, Grant Thornton International Ltd., and Skadden, Arps, Slate, Meagher & Flom, LLP, ("removing defendants"). Fourteen defendants filed consents to the removal: Consulting Services Group, LLC, Joe Meals, Alphonse "Buddy" Fletcher, Jr., Denis Kiely, Duhallow Financial Services, LLC, Fletcher Asset Management, Inc., Citco Fund Services (Bermuda) Limited, Citco (Canada), Inc., Citco Global Custody N.V., Citco Group Limited, Citco Banking Corporation N.V., Citco Bank Nederland, N.V. Dublin Branch, Citco Fund Services (Cayman Islands) Limited, and Citco Fund Services (Europe) BV.[2]

In their Petition the plaintiffs alleged claims against the

---

[2] Defendants alleged in the Notice of Removal that named defendants Citco Fund Services (Suisse) S.A. had been liquidated, the entities named as Citco N.V. and Citco USA did not exist, and the Non-Series N Shareholders were fictitious defendants. The record does not reflect that defendant Lisa Alexander, who the defendants alleged was a citizen of Canada has been served. Record document number 1, Notice of Removal, pp. 8-9.

defendants under the following Louisiana state laws: (1) the Louisiana Securities Act; (2) third party beneficiary; (3) unjust enrichment under Louisiana Civil Code Article 2298; (4) breach of contract; (5) tort claims under Louisiana Civil Code Article 2315; (6) negligent misrepresentation; and, (7) the Louisiana Unfair Trade Practices Act.   Plaintiffs did not allege claims under federal law against any of the defendants.

The removing defendants alleged the following grounds for removal: (1) jurisdiction under 28 U.S.C. § 1334(b), which provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11"; and (2) diversity jurisdiction under 28 U.S.C. § 1332(a).[3]

Plaintiffs moved to remand based on a lack of subject matter jurisdiction, and alternatively, based on mandatory and permissive abstention under 28 U.S.C. § 1334(c)(1) and (2) for actions related to bankruptcy cases.

This Magistrate Judge's Report addresses only whether the court has subject matter jurisdiction under § 1334(b), and if there is jurisdiction, whether the court must abstain from exercising it based on § 1334(c)(2), or remand on equitable grounds under § 1452(b) and the permissive abstention provision, § 1334(c)(1).

---

[3] The removal statutes that correspond to these grants of federal jurisdiction are 28 U.S.C. §§ 1441(a) and 1452(a).

3

For the reasons which follow, the court has related-to bankruptcy jurisdiction under § 1334(b). However, the plaintiffs' Motion to Remand should be granted based on the statutes providing for permissive abstention and equitable remand.

## Background

It is apparent from the multitude of pleadings filed in connection with the motion that this case has a complex factual and procedural background. The background information set forth below is derived from the Petition and the parties' memoranda and exhibits, and focuses on the facts most relevant to the jurisdiction and abstention issues addressed herein.[4]

Plaintiffs' state law statutory, breach of contract and tort claims are arise from the plaintiffs' loss of a $100 million investment. Plaintiffs are three retirement systems that provide pension benefits to New Orleans firefighters and certain other firefighters and municipal employees in the state of Louisiana. In April 2008 the plaintiffs purchased 100,000 Series N Shares offered and issued by FIA Leveraged Fund (hereafter "Leveraged") for $100 million.[5] Leveraged was incorporated in the Cayman Islands and was

---

[4] All of the memoranda and exhibits filed in connection with the motion have been reviewed. However, only those arguments and exhibits necessary to resolve the issues presented are cited in this report.

[5] Plaintiffs alleged that the Offering Memorandum for the shares purchase was prepared by defendant Skadden, Arps, Slate,
(continued...)

a feeder fund in a group of other companies, namely, Fletcher
Income Arbitrage Fund, Ltd. (hereafter "Arbitrage"), which is
another entity incorporated in the Cayman Islands, Fletcher
International Inc. (hereafter "International"), and Fletcher
International Ltd., (hereafter "International/Debtor" or "Debtor",
and collectively, "Fletcher defendants"). International/Debtor is
the debtor in the New York bankruptcy proceeding on which the
defendants base their argument that the court has subject matter
jurisdiction under § 1334(b).[6]

After Leveraged received the $100 million from the plaintiffs,
it invested the money in Arbitrage, and the assets of Arbitrage in
turn were invested in International, which then invested the assets
in International/Debtor.[7]

Plaintiffs alleged that various Citco defendants were the
administrators of Leveraged and Arbitrage and that these funds were

---

[5](...continued)
Meagher & Flom, LLP, a major New York law firm.  Record document
number 1-3, Petition, ¶ 19.
    The Firefighters Retirement System paid $45 million for 45,000
Series N Shares, the Municipal Employees Retirement System paid $40
million for 40,000 Series N Shares, and the New Orleans Pension and
Relief Fund paid $15 million for 15,000 Series N Shares.  *Id.*, ¶
34.

[6] International/Debtor filed a voluntary petition under
Chapter 11 in the Southern District of New York, Case Number 12-
12796.

[7] Record document number 113, Defendants' Joint Memorandum of
Law in Opposition of Plaintiffs' Motion to Remand to Louisiana
State Court, p. 3 (diagram).

managed and controlled by Fletcher Asset Management, Inc. and the other Fletcher defendants.    According   to   the   plaintiffs' allegations, the Fletcher defendants, and defendants Consulting Services Group, LLC and Meals, represented that the Leveraged Series N Shares they purchased were preferred shares with a guaranteed annual return of 12 percent.  Beginning in March 2011 the plaintiffs sought to redeem their Series N shares from Leveraged.   Leveraged responded to the redemption requests by attempting  to  issue  the  plaintiffs  various  payment-in-kind redemptions and promissory notes, which the plaintiffs rejected. After several months of being unable to redeem their Series N Shares the plaintiffs realized that their investment in Leveraged was not liquid.  Plaintiffs alleged that no cash payments were ever paid to redeem the shares, and they have suffered a loss of the entire  $100  million  purchase  price  of  the  Series  N  Shares.[8] Plaintiffs claimed that this loss and other damages were caused by the  defendants'  collective  breach  of  contract,  negligence, deception, fraud, misrepresentations and omissions.

For example, the plaintiffs alleged that the defendants failed to inform them that: (1) at the time of the purchase, Leveraged and Arbitrage were already invested in illiquid investments, no new assets would be bought with the plaintiffs' purchase funds, and the primary purpose of the Leveraged offering was to provide funds for

---

[8] Record document number 1-3, Petition, ¶¶ 41-45.

6

redemption of past investors in Arbitrage; (2) a substantial amount of the proceeds of the sale of the Series N Shares were used to redeem Arbitrage and Leveraged shares of funds owned and operated by the Fletcher and Citco defendants and to pay them fees; (3) the value of the companies in which Leveraged invested through Arbitrage was grossly inflated since none of them had significant earnings or reasonable prospects for earnings, which rendered the plaintiffs' guaranteed rate of return and redemption rights virtually meaningless; (4) the money invested by the plaintiffs was misapplied to satisfy the redemption requests by other investors based on share prices calculated by the Citco defendants that relied inflated values in Leveraged and Arbitrage; (5) the value of Leveraged's assets was not independently evaluated and verified, and the incorrect valuations reported by Fletcher and Leveraged were used to sell the investments to the plaintiffs and provide a basis for inflated redemptions by Arbitrage using the proceeds of the plaintiffs' investment; (6) the significant benefit that the Fletcher defendants, Citco defendants, Consulting Services Group, LLC and Meals realized by recommending and selling the shares to the plaintiffs resulted from insider dealings and conflicts of interest; and (7) the net cash flow to Leveraged was minimal or non-existent from investments and net profits that were fictitiously created by revaluation of assets and asset swaps that

7

never occurred.[9]  However, the plaintiffs did not name Leveraged, Arbitrage, International or International/Debtor as defendants in this case.

Paragraph 38 of the Petition includes "alter ego" allegations relied on by the defendants to support their argument that the court has related-to bankruptcy jurisdiction:

> The Fletcher Defendants, Citco Defendants, and Investment Advisor Defendants are directly liable for the acts and omissions of any subsidiary that performed any of these functions or failed to perform any of these functions and each subsidiary is the alter ego of Fletcher Defendants, Citco Defendants, and Investment Advisor Defendants in the conduct of each's respective business including the schemes described herein.  Specifically, each of the Fletcher Defendants, Citco Defendants, and Investment Advisor Defendants owns, controls, and dominated each subsidiary to such an extent that each such subsidiary, in reality, functions as a mere division or branch of the respective parent.  Indeed, the Fletcher Defendants, Citco Defendants, and Investment Advisor Defendants, along with their respective subsidiaries, each operate as one single unified worldwide business unit or single business enterprise, all operating under the Fletcher Defendants, Citco Defendants, and Investment Advisor Defendants' respective brand, international trademark or tradename and logo, which is prominently displayed on all documents and advertising of each of these Defendants. The parent entity of each of the Fletcher Defendants, Citco Defendants, and Investment Advisor Defendants controls the manner in which its subsidiaries are perceived by the public and therefore intentionally creates the impression in the minds of third parties that each acts as one unified, global entity that is a single unit.

The second focus of this background summary is the liquidation proceedings initiated by the plaintiffs and the subsequent

---

[9] *Id.*, ¶¶ 35 (A-J).

8

bankruptcy proceedings pending in the Southern District of New York.  After the efforts to redeem their Series N Shares continued to be unsuccessful, in January 2012 the plaintiffs filed a winding-up petition against Leveraged in the Grand Court of the Cayman Islands.  On April 18, 2012 the Cayman Island Court ordered Leveraged to be wound up and appointed liquidators for the Leveraged.  Then, at the plaintiff's direction, the liquidators filed a winding-up petition in the Cayman Islands against Arbitrage on June 8, 2012.  Roy Baily and Robin Lee McMahon (hereafter, "Liquidators"), who are specialists in offshore hedge fund liquidations, were appointed by the Cayman Islands Court over the Leveraged and Arbitrage winding-up proceedings.[10]  Plaintiffs funded the liquidations of Leveraged and Arbitrage.

In his amended and corrected affidavit filed On July 26, 2012 in the bankruptcy case of International/Debtor, McMahon explained the master-feeder fund structure of which Leveraged and Arbitrage were a part.  McMahon stated that Leveraged was the feeder fund at the base of the structure and its purpose was to invest all of its assets in Arbitrage.[11]  Arbitrage was an intermediate fund set up to invest everything with affiliate entities, and it invested almost all of its funds in International, which in turn owned all

---

[10]  Record document number 113-1, Declaration of Andrew G. Gordon, attached Exhibits A - C.

[11]  The Liquidators determined that Leveraged was insolvent.

of the shares in International/Debtor.[12]  McMahon described Fletcher
Asset Management, Inc. (defendant in this case) as the "Master of
the Structure," in its role as the investment manager for all of
the entities in the structure – International/Debtor,
International, Arbitrage, Leveraged, and Fletcher Fixed Income
Alpha Fund Ltd.  McMahon stated that the chairman and CEO of
Fletcher Asset Management is Alphonse Fletcher Jr. (defendant in
this case), and its other directors are Kell Benson, Denis Kiely
(defendant in this case), Stewart Turner and Angela Dorn.  After
more than three months of forensic investigation, McMahon concluded
that the management and control of the entities in the structure
was centralized and vested in Fletcher Asset Management, and the
directors of the entities were all either directors of the Fletcher
Asset Management or associated with it, and some were appointed
over many or all of the entities.  This centralized control by
Fletcher Asset Management over, and the interlocking directorships
among, the entities comprising the structure resulted in the
structure being managed as a single entity without the checks and
balances normally expected to protect the rights of each company
and its stakeholders.  According to McMahon, the plaintiffs are the
largest stakeholders, and most significant, truly aggrieved parties

_____

[12] Another offshore feeder fund that invested in Arbitrage was
Fletcher Fixed Income Alpha Fund Ltd.  It went into voluntary
liquidation.

with respect to International/Debtor.[13]

After being served a written demand for repayment of a promissory note that it issued to Leveraged, International/Debtor filed its Chapter 11 petition in the Southern District of New York on June 29, 2012.  Before Leveraged was served with notice of the New York proceedings, it had filed a winding up petition with respect to Internatinoal/Debtor on May 28, 2012 in the Supreme Court of Bermuda.  However, the Liquidators were informed on July 2, 2012 of the International/Debtor's Chapter 11 petition.

Relevant to the present Motion to Remand are various proofs of claim filed in International/Debtor's bankruptcy proceeding by the plaintiffs, the Liquidators, and multiple defendants in this case - Fletcher Asset Management, Inc., Alphonse Fletcher, Jr., Duhallow Financial Services and Denis Kiely.

Each of the plaintiff pension funds filed a proof of claim on January 18, 2013.[14]  The plaintiffs' proofs of claim had the same attachment, which explained the factual and legal basis for their claims against International/Debtor.  Plaintiffs explained their $100 million investment in the Leveraged Series N Shares, which was

---

[13] Record document number 113-2, Exhibit A, Amended and Corrected Affidavit of Robin McMahon, ¶¶ 12, 23-43.

[14] Record document numbers 113-6 (Claim 18-1, The Firefighter's Retirement System); record document number 114 (Claim 19-1, The Municipal Employees' Retirement System of Louisiana); record document number 114-1 (Claim 20-1, The New Orleans Firefighters' Pension & Relief Fund).

then invested in Arbitrage and International/Debtor. Plaintiffs alleged that the Internatinoal/Debtor is the master fund in a group of affiliated private investment funds that include Leveraged and Arbitrage as part of the master-feeder fund structure of the Fletcher funds. Therefore, unable to redeem their shares from Leveraged, the plaintiffs claimed that International/Debtor, as the alter ego of Leveraged, was liable for breach of the contract between Leveraged and the plaintiffs, and also liable for conspiring, aiding and abetting Leveraged's fraud on the plaintiffs.

McMahon, as one of the Liquidators, also filed a proof of claim against International/Debtor, noting that it was related to the proofs of claim filed by the plaintiffs, and incorporated by reference the plaintiffs' attachment to their proofs of claim.[15] In an addendum McMahon explained that the basis of the claim was the wrongful conduct of International/Debtor, its directors and other Fletcher entities, including their investment manager, Fletcher Asset Management, Inc., which caused the loss of the investors' redemption claims against Leveraged. McMahon stated that Leveraged primarily had direct claims against Arbitrage, which in turn had direct claims against International/Debtor. Therefore, Leveraged had an indirect claim against Internaional/Debtor.

---

[15] Record document numbers 114-2 and 114-3, Exhibits H and I, respectively.

However, because the formalities of the Fletcher funds structure might not be upheld, Leveraged made a direct claim against the International/Debtor as the alter ego of Arbitrage.

Fletcher Asset Management and Duhallow Financial Services also filed proofs of claim against International/Debtor.[16]  Both listed as their first claim a claim for corporate indemnification, which stated in identical language as follows:

> Claims against the Debtor for any and all rights and entitlement that the Claimant has or may have to indemnification, contribution, reimbursement or other payments, including damages, costs and expenses related thereto, from the Debtor that are based upon applicable law, the Debtor's certificate or articles of incorporation, the Debtor's bylaws, any contract, any agreement or otherwise, arising in respect of or by reason of the Claimant's relationship to the Debtor or one or more other corporations, partnerships, limited liability companies, joint ventures, trusts, plans or other enterprises or entities owned or controlled by the Debtor.  In particular, the Claimant is asserting a claim for indemnification in connection with any pending and future litigation.

Similarly, Denis J. Kiely and Alphonse Fletcher Jr. filed proofs of claim against International/Debtor.[17]  They both made "Corporate Indemnification" claims under International/Debtor's director and officer insurance programs, and claims against International/Debtor for indemnification, contribution, and reimbursement arising out of the fact that they were an officer or

_____

[16] Record document numbers 114-5 and 114-6, Exhibits K and L, respectively.

[17] Record document numbers 114-7 and 114-8, Exhibits M and N, respectively.

director of the Debtor, or "serving at the request of, or for the benefit of, the Debtor as a director, officer, employee, agent or trustee of one or more other corporations, partnerships, limited liability companies, joint ventures, trusts, plans or other enterprises or entities."  They also concluded the paragraph by asserting a claim for indemnification in connection with any pending and future litigation.

## Applicable Law

### General Principles

The removing party bears the burden of establishing federal jurisdiction over a state court suit. *Carpenter v. Wichita Falls Independent School Dist.*, 44 F.3d 362, 365 (5th Cir. 1995).  As with removal under the general provision of § 1441(a), the existence of subject matter jurisdiction is determined as of the time of removal. *In re Bissonnet Investments* LLC, 320 F.3d 520, 525 (5th Cir. 2003); In *re Legal Xtranet, Inc.*, 453 B.R. 699, 703-04 (W.D. Tex. 2011).  Thus, if "related to" jurisdiction exists at the time of removal, subsequent events do not divest the district court of subject matter jurisdiction.  *In re Enron Corp. Securities*, 535 F.3d 325, 336 (5th Cir. 2008).  Generally, the "well-pleaded complaint" rule applies only to statutory "arising under" cases. *American National Red Cross v. S.G.,* 505 U.S. 247, 258, 112 S.Ct. 2465 (1992).  Therefore, the "well-pleaded

14

complaint" rule is used to determine whether there is "arising under" jurisdiction in bankruptcy, but it is not applicable in "related to" bankruptcy removal cases. *In re Enron Corp. Securities, Derivative & ERISA Litigation*, 511 F.Supp.2d 742, 764 (S.D. Tex. 2005); *In re Brooks Mays Music Co.,* 363 B.R. 801, 814-15 (N.D. Tex. 2007).

**Contractual Waiver of Right to Remove**

For a contractual clause to prevent a party from exercising its right to removal, the clause must be a clear and unequivocal waiver of that right. *City of New Orleans v. Municipal Admin. Services*, 376 F.3d 501, 504 (5th Cir. 2004). The waiver, however, is not required to contain explicit words such as "waiver of right of removal." *Waters*, *supra*; *Dixon v. TSE Intern. Inc.*, 330 F.3d 396 (5th Cir. 2003)(per curiam). A party may waive its removal rights by explicitly stating that it is doing so, by allowing the other party the right to choose venue[18] or by establishing an exclusive venue within the contract. A party's consent to jurisdiction in one forum does not necessarily waive its right to have an action heard in another. Thus, for a forum selection clause to be exclusive it must go beyond establishing that a

---

[18] A party to a contract may waive the right to remove a case provided the provision of the contract makes clear that the other party to the contract has the right to choose the forum in which any dispute will be heard. *Waters v. Browning-Ferris Industries, Inc.*, 252 F.3d 796, 797 (5th Cir. 2001).

certain forum will have jurisdiction and must clearly demonstrate the intent to make that jurisdiction exclusive. *City of New Orleans*, *supra*.

The principles of contract interpretation under Louisiana law are well-established. Interpretation of a contract is the determination of the intent of the parties. Except for technical terms, the words of a contract must be given their generally prevailing meaning. Each provision must be read in light of the others so that each is given the meaning suggested by the contract as a whole. If the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and the agreement must be enforced as written. Louisiana Civil Code Articles 2045, 2046, 2047, 2050. *Taita Chemical Co. Ltd. v. Westlake Styrene Corp.*, 246 F.3d 377, 386 (5th Cir. 2001). A contract is ambiguous if, after applying the rules of contract interpretation, the contract is uncertain as to the parties' intent and susceptible to more than one reasonable interpretation under the circumstances. *Riverwood Intern. Corp. v. Employers Ins. of Wausau*, 420 F.3d 378, 382 (5th Cir. 2005).

Under Louisiana law, waiver is defined as the intentional relinquishment of a known right, power or privilege. *Taita Chemical*, 246 F.3d at 388, citing, *Steptore v. Masco Constr. Co.*, 93-2064 (La. 8/18/94), 643 So.2d 1213, 1216. Waiver requires that

16

there first be an existing right and that a party have knowledge of that right's existence.  A party may then waive that right through either an actual intention to relinquish it, or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished.  *Id.*; *Legier and Materne v. Great Plains Software, Inc.*, 2005 WL 1431666 (E.D. La. May 31, 2005).

**Subject Matter Jurisdiction under 28 U.S.C. § 1334**

Under 28 U.S.C. § 1334(a) the district court has original and exclusive jurisdiction over all cases under Title 11.  Under § 1334(b) the district courts have original but not exclusive jurisdiction over all civil proceedings arising under Title 11 or arising in or related to cases under Title 11.  Thus, § 1334 provides jurisdiction in four types of matters: (1) cases under Title 11; (2) civil proceedings arising under Title 11; (3) civil proceedings arising in cases under Title 11; and (4) civil proceedings related to cases under Title 11.  *In re Matter of Wood*, 825 F.2d 90, 92 (5th Cir. 1987).  The phrase "under Title 11" refers to the bankruptcy proceeding itself.  The phrase "arising under Title 11, or arising in or related to cases under Title 11" identifies, collectively, a broad range of matters subject to bankruptcy jurisdiction.  The phrase "arising under Title 11" defines proceedings that involve a cause of action created or determined by a statutory provision of Title 11.  The terms

17

"arising in...cases under Title 11" refers to administrative matters that arise only in bankruptcy cases.  *Id.*

"Related to" is a term of art.  *In re Canion,* 196 F.3d 579, 585 (5th Cir. 1999).  To determine whether a matter falls within general "related to" jurisdiction, it is necessary only to determine whether a matter is at least related to the bankruptcy. *In re Bass,* 171 F.3d 1016, 1022-23 (5th Cir. 1999).[19]  Matters "related to cases under Title 11," refers to a much broader category of proceedings.  For purposes of bankruptcy jurisdiction, the phrase has a causal component.  For bankruptcy jurisdiction to exist based on a case being related to a case under Title 11, the proceeding must be capable of causing an effect on a bankruptcy estate.  *Id.*  Thus, "a proceeding is related to a bankruptcy if the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."   State another way, an action is related to a bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts the handling and administration of the debtor's estate.  *Id.; In re Walker*, 51 F.3d 562, 569 (5th Cir. 1995).  For jurisdiction to attach, the

---

[19] For purposes of determining whether a particular matter falls within bankruptcy jurisdiction, it is not necessary to distinguish between proceedings arising under, arising in a case under, or related to a case under title ll.  It is necessary only to determine whether a matter is at least related to the bankruptcy. *Matter of Wood*, 825 F.2d at 93.

anticipated outcome of the action must both alter the rights, obligations, and choices of action of the debtor, and have an effect on the administration of the estate. *Id.* The law is well established that when testing "related to" jurisdiction, an effect is not required to be certain. Certainty, or even likelihood of such an effect is not a requirement. Rather, jurisdiction will attach on a finding of any conceivable effect. *In re Canion,* 196 F.3d at 587.

The exercise of jurisdiction over cases related to bankruptcy cases is primarily intended to encompass tort, contract, and other legal claims by and against the debtor, claims that, were it not for bankruptcy, would be ordinary stand-alone lawsuits between the debtor and others but that § 1334(b) allows to be forced into bankruptcy court so that all claims by and against the debtor can be determined in the same forum. *In re Zale Corporation*, 62 F.3d 746, 751 (5th Cir. 1995). Another purpose is to force into the bankruptcy court, those suits to which the debtor need not be a party but which may affect the amount of property in the bankrupt's estate. *Id.* at 752.

Nevertheless, "related to" jurisdiction is not limitless. "[A]s a dispute becomes progressively more remote from the concerns of the body of federal law claimed to confer jurisdiction over it, the federal interest in furnishing the rule of decision for the dispute becomes progressively weaker." *Id.; Zerand-Bernal Group,*

19

*Inc. v. Cox*, 23 F.3d 159, 162 (7th Cir. 1994).  Those cases in which the exercise of "related to" jurisdiction over third-party actions is upheld do so because the subject of the third-party dispute was property of the estate or because the dispute over the asset would have an effect on the estate.  *In re Zale,* 62 F.3d at 753.[20]  Shared facts between the third-party action and a debtor-creditor conflict do not, in and of themselves, suffice to make the third-party action related to the bankruptcy.  Judicial economy alone also does not justify the exercise of "related to" jurisdiction over an otherwise unrelated suit.  It is the relation of the dispute to the estate, and not the party to the estate that establishes jurisdiction.  *In re Zale,* 62 F.3d at 753-755.

### Mandatory and Permissive Abstention

If the court has jurisdiction under § 1334(b) the next issue that must be addressed is abstention - permissive abstention under

---

[20] *See, In re Canion*, *supra*, citing, Owens Illinois, Inc. v. Rapid American Corp ( In re Celotex Corp.), 124 F.3d 619, 626 (4th Cir.1997) (finding "related to" jurisdiction when a creditor's claim against a non-debtor would reduce its claim in bankruptcy); Kaonohi Ohana, Ltd. v. Sutherland, 873 F.2d 1302, 1306-07 (9th Cir.1989) (upholding "related to" jurisdiction over third-party action as specific performance remedy in third-party action would reduce damages in breach of contract claim against bankruptcy estate); National Union Fire Ins. Co. v. Titan Energy, Inc., 837 F.2d 325, 329 (8th Cir.1988) (holding that a coverage dispute between the debtor's insurance company and a creditor was "related to" the bankruptcy as a finding of coverage would reduce the claims against the estate); Carr v. Michigan Real Estate Ins. Trust (In re Michigan Real Estate Trust), 87 B.R. 447 (E.D.Mich.1988).

28 U.S.C. § 1334(c)(1) and mandatory abstention under § 1334(c)(2).

Mandatory abstention is based on § 1334(c)(2), which provides as follows:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

The Fifth Circuit has interpreted this provision to mandate federal court abstention where: (1) the claim has no independent basis for federal jurisdiction, other than § 1334(b); (2) the claim is a non-core proceeding; (3) an action has been commenced in state court; and (4) the action could be adjudicated timely in state court. *Schuster v. Mims (In re Rupp & Bowman)*, 109 F.3d 237, 239 (5th Cir.1997); *In re TXNB Internal Case*, 483 F.3d 292, 300 (5th Cir. 2007); *In re Southmark Corp.*, 163 F.3d 925, 929 n.2 (5th Cir.), *cert denied*, 527 U.S. 1004, 119 S.Ct. 2339 (1999).

Permissive abstention is based on § 1334(c)(1), which provides as follows:

> Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

Thus, the court in its discretion may abstain from deciding either core or noncore proceedings under § 1334(c)(1), if the

21

interests of justice, comity or respect for state law so require. *Matter of Gober*, 100 F.3d 1195, 1206 (5th Cir. 1996). This permissive abstention provision is implemented in conjunction with the bankruptcy jurisdiction removal statute, which provides that "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b).

The Fifth Circuit listed eight considerations for equitable remand in *Brown v. Navarro,* 743 F.2d 1069, 1076 fn. 21 (5th Cir. 1984). They are: (1) forum non conveniens; (2) if the civil action has been bifurcated by removal, the entire action should be tried in the same court; (3) whether a state court is better able to respond to questions involving state law; (4) the expertise of a particular court; (5) duplicative and uneconomic effort of judicial resources in two forums; (6) prejudice to the involuntarily removed parties; (7) comity considerations; and, (8) a lessened possibility of an inconsistent result. *Id.*; *In re Johnson,* 506 B.R. 233, 241 (M.D.La.,2014).

When the issue is equitable remand and the appropriateness of permissive abstention under § 1334(c)(1), some district and bankruptcy courts cite these eight factors, others cite a list of 14 factors which include the requirements for mandatory abstention, and some cite both sets of factors. The 14 factors are: (1) the effect or lack thereof on the efficient administration of the

estate if the court decides to remand or abstain; (2) extent to which state law issues predominate over bankruptcy issues; (3) difficult or unsettled nature of applicable law; (4) presence of related proceeding commenced in state court or other non-bankruptcy proceeding; (5) jurisdictional basis, if any, other than § 1334; (6) degree of relatedness or remoteness of proceeding to main bankruptcy case; (7) the substance rather than the form of an asserted core proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of the court's docket; (10) the likelihood that the commencement of the proceeding in the [district] court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; (12) the presence in the proceeding of non-debtor parties; (13) comity; and, (14) the possibility of prejudice to other parties in the action. *Regal Row Fina, Inc. v. Washington Mutual Bank*, 2004 WL 2826817, 8-9 (N.D. Tex., Dec. 9, 2004, N.D.Tex.); *In re Ballard*, 2012 WL 4162382 (Bkrtcy. S.D. Tex., Sept. 19, 2012); Sonnier v. Hesco Bastion USA, LLC, 2013 WL 5350853 (M.D. La., Sept. 23, 2013); *In re J. Moss Investments,* Inc., 2012 WL 2150346 Bkrtcy. S.D. Tex., 2012); In re *Trimjoist Corp.*, 2013 WL 3934368 (Bkrtcy. N.D. Miss., July 30, 2013).

### Costs and Expenses under 28 U.S.C. § 1447

Plaintiffs also requested an award of cost and actual expenses

23

including attorney's fees under 28 U.S.C. § 1447(c).

There is no automatic entitlement to an award of attorney fees under § 1447(c).  The clear language of the statute, which provides that the "order remanding the case may require payment of just costs and any actual expenses including attorney fees, incurred as a result of the removal," makes such an award discretionary.  The Supreme Court set forth the standard for awarding fees under § 1447(c) in *Martin v. Franklin Capital Corporation*, 546 U.S. 132, 126 S.Ct. 704 (2005):

> [T]he standard for awarding fees should turn on the reasonableness of the removal.  Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied.  *See*, *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 541 (5th Cir. 2004); *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 293 (5th Cir. 2000).  In applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case.  For instance, a plaintiff's delay in seeking remand or failure to disclose facts necessary to determine jurisdiction may affect the decision to award attorney's fees.  When a court exercises its discretion in this manner, however, its reasons for departing from the general rule should be "faithful to the purposes" of awarding fees under § 1447(c).

*Id.*, at 711.

The court must consider the propriety of the removing party's actions at the time of removal, based on an objective view of the legal and factual elements in each particular case, irrespective of the fact that it was ultimately determined that removal was

24

improper.  *Id.; Miranti v. Lee*, 3 F.3d 925, 928 (5th Cir. 1993);
*Avitts v. Amoco Production Co.*, 111 F.3d 30, 32 (5th Cir.), *cert.
denied*, 522 U.S. 977, 118 S.Ct. 435 (1997).

### Parties' Arguments and Analysis

### Alleged Defect in Removal - Lack of Unanimous Consent

The initial issue that must be addressed is the plaintiffs'
argument that remand is required because the rule of unanimity
applies to removals based on bankruptcy jurisdiction, and unanimous
consent is lacking in this case.  Plaintiffs' argument is premised
on its claim that defendant Consulting Services Group LLC
("Consulting") could not validly consent to removal because it
waived the right to remove in its contract with the Firefighters'
Retirement System.  In other words, the plaintiffs' argument is
that when a party waives the right to remove and then consents to
a removal, the consent is invalid.  Acknowledging that the Fifth
Circuit has not addressed the issue of unanimity in bankruptcy
removals, in support of their position the plaintiffs relied on an
Eastern District of Louisiana unpublished decision, *In re Fee
Agreement Between Huey & Fong Trust and Kenneth Huey*.[21]

Defendants maintained that unanimous consent is not required
to remove a case under § 1452(a) because, unlike § 1446(a) which
only provides that a defendant or defendants may remove, § 1452(a)

---

[21] 2010 WL 3303830, *8 (E.D. La. Aug. 18, 2010).

states that "a party" may remove any claim or cause of action if the district court has jurisdiction under § 1334.[22]   Defendants argued that the decisions from other circuits and district courts which adopt the view that unanimity is not required to remove under § 1452(a) are persuasive.[23]   Defendants argued in the alternative that the consent to removal of this case is unanimous because Consulting did not contractually waive its right to remove, and therefore its consent to removal is valid.

In the context of this motion, it is unnecessary to determine which court decisions are more persuasive on the unanimity question for bankruptcy removals.   Assuming unanimous consent is required, Consulting did not clearly and unequivocally waive its right to remove in the contract with the Firefighters' Retirement System. Therefore, it could consent, and did consent, to the removal.

Plaintiffs relied on the following provision in Section XI of the contract:

> Any action arising under this contract shall be brought in the Nineteenth (19th) Judicial District Court for the Parish of East Baton Rouge, State of Louisiana.[24]

---

[22] Defendant Consulting filed a separate memorandum addressing the unanimity/waiver issue.   Record document number 88.   The other defendants adopted and incorporated these arguments.   Record document number 113, p. 40.

[23] Record document number 88, Consulting Services Group LLC's Opposition to Plaintiffs' Motion to Remand, pp. 8-9 (cases cited therein).

[24] Record document number 60-3, Exhibit A, Affidavit of Steven
(continued...)

Citing several Fifth Circuit decisions, including, *Ensco Intern., Inc. v. Certain Underwriters at Lloyd's*,[25] the plaintiffs argued that this language demonstrates a clear and unequivocal waiver of removal rights.

Plaintiffs' arguments are not persuasive. Because the cited contract provision does not contain an explicit waiver, the court must determine whether the contract provision gives the plaintiffs the right to choose venue or establishes an exclusive venue. The terms of Section XI of the contract cannot be reasonably interpreted to do either. The provision neither states nor implies that Consulting agreed to give the plaintiffs the exclusive right to choose the jurisdiction or venue for actions arising under the contract. While the provision does require actions arising under the contract to be brought in the Nineteenth Judicial District Court for the State of Louisiana, this only establishes the parties' agreement and consent to actions being brought in that state court. To demonstrate that a forum selection clause is exclusive, the contract language must go beyond establishing that a particular forum will have jurisdiction; it must clearly

---

[24](...continued)
Stockstill, attached Exhibits 1 and 2. Section XI also included a sentence preceding this, which stated that the rights and obligations of the parties to the contract would be construed, interpreted and enforced in accordance with the laws of the State of Louisiana.

[25] 579 F.3d 442 (5th Cir. 2009).

demonstrate the parties' intent to make that jurisdiction exclusive. *City of New Orleans*, 376 F.3d at 504*, citing, Keaty v. Freeport Indonesia, Inc.,* 503 F.2d 955 (5th Cir. 1974). The contract provision does not contain any language that goes beyond the agreement and consent to bring actions in Nineteenth Judicial District Court.   The provision does not indicate an intent to place jurisdiction in that state court to the exclusion of all other courts.

The contractual language at issue here is clearly different from that involved in the *Ensco* case cited by the plaintiffs.  In *Ensco* the forum selection clause of the insurance policy stated that any disputes arising under or in connection with it "shall be subject to the exclusive jurisdiction of the Courts of Dallas County, Texas." The court stated that given these terms, to permit removal would read the word "exclusive" out of the contract. *Ensco*, 579 F.3d at 443, 449. Where one jurisdiction is specified, but other jurisdictions are not excluded, the clause is insufficient to demonstrate a clear and unequivocal waiver of removal rights. *City of New Orleans,* 376 F.3d at 505.  Even if specifying one jurisdiction, a provision that does not mention other courts or include exclusivity language is considered ambiguous, and this ambiguity shows that the party did not clearly and unequivocally waive the right to removal.  *Id*.

The provision relied on by the plaintiffs does not include any

28

terms that can be interpreted as an explicit or implicit agreement by the parties to place exclusive jurisdiction in the Nineteenth Judicial District Court of the State of Louisiana. Therefore, Consulting's agreement to this provision was not a clear and unequivocal waiver of its removal rights. Because this defendant could and did consent to removal,[26] the plaintiffs' argument that removal was defective based on a lack of unanimous consent should be rejected.

**Subject Matter Jurisdiction under § 1334(b)**

Defendants argued that the circumstances of this case easily satisfy the broad standard of "any conceivable effect" on the estate being administered in bankruptcy. Defendants claimed the following circumstances demonstrate that this case has a conceivable effects on the bankruptcy proceedings: (1) given the master-feeder structure of the Fletcher funds, the plaintiffs' and the Liquidators' proofs of claim, which include alter ego allegations with regard to International/Debtor, its directors, the Fletcher funds and other Fletcher entities, the plaintiffs are looking to International/Debtor for recovery of the same investment loss they are attempting to recover in the state court suit; (2) because the plaintiffs are trying to recover the same loss from International/Debtor and the defendants in the state court suit,

---

[26] Record document number 2, Notice of Consent to Removal.

29

whatever the plaintiffs recover in state court will reduce or eliminate a liability of International/ Debtor; and, (3) the plaintiffs sued four defendants in the state court suit - Fletcher Asset Management, Inc., Duhallow Financial Services, Denis Kiely and Alphonse Fletcher, Jr. - who had already filed proofs of claim seeking indemnification from International/Debtor if they are held liable in connection with any pending or future litigation.

Defendants' arguments are convincing. Plaintiffs' arguments are not supported by the record and the applicable law. Plaintiffs initially argued that the well-pleaded complaint rule governs the presence or absence of federal jurisdiction. Using this rule, plaintiffs argued that related-to jurisdiction is not present on the face of their Petition because it does not mention International/Debtor, allege any claims against International/ Debtor, or make any alter ego allegations against International/Debtor.

However, the well-pleaded complaint rule is not applicable in determining whether the court has related to bankruptcy jurisdiction. To determine whether the defendants have established jurisdiction under § 1334(b) the plaintiffs' Petition is not the end of the inquiry; it is the beginning. The court must then look to the other information in the record that is relevant to the test for related-to bankruptcy jurisdiction - whether the outcome of the state court proceeding could conceivably have any effect on the

30

estate being administered in bankruptcy. Therefore, the fact that the plaintiffs' Petition does not mention International/Debtor, does not allege a claim against International/Debtor, and does not include alter ego allegations that specifically refer to International/Debtor, is not dispositive.[27]

The other information, which is found in the proofs of claim and other documents filed in the bankruptcy case,[28] establishes an unbroken chain of alter ego allegations connecting the plaintiffs' initial investment in Leveraged to International/Debtor through the intermediate funds of Arbitrage and International, all under the control and management of Fletcher Asset Management, its chairman and CEO Alphonse Fletcher, Jr. and its directors, one of which was Denis Kiely. It is equally apparent from the plaintiffs' Petition[29] as well as the plaintiffs' and Liquidators' proofs of claim, that the primary purpose of both this case and the bankruptcy proceeding

---

[27] Plaintiffs emphasized that paragraph 38 of their Petition, which contains alter ego allegations, only names the Fletcher defendants; it does not mention International/Debtor, Leveraged, Arbitrage or any of the other Fletcher entities, officers or directors. Nevertheless, in the paragraph containing their alter ego allegations the plaintiffs refer to the subsidiaries and parent entities of the Fletcher defendants. Viewing the Petition as a whole, and considering the information in the proofs of claim and other bankruptcy filings, it is reasonable to infer that these general references are to the other Fletcher-related funds/entities and individuals, who are not specifically named as defendants in the state court petition.

[28] This information is summarized in the Background section of this report.

[29] Record document number 1-3, Petition, ¶¶ 45 and 313.

31

is to recover the plaintiffs' $100 million investment loss they suffered by purchasing the Leveraged Series N Shares. Plaintiffs do not dispute that these are the connections between this case and the bankruptcy. Thus, the plaintiffs' assertion that there is no relationship between International/Debtor's bankruptcy and the claims they brought in this case is unsupported.

Nor is it, as the plaintiffs' attempted to argue, merely a tangential relationship based on the fact that some of the same parties and underlying facts are involved in both the bankruptcy and the state court case. Given the alleged alter ego relationship between International/Debtor, the Fletcher funds and defendants, and the fact that the plaintiffs seek both in this case and from International/Debtor the return of their investment in the Series N Shares, it is evident that the outcome of this case could conceivably affect the estate being administered in bankruptcy. If the outcome is that the plaintiffs succeed in fully or partially recovering their $100 million investment loss, this recovery would reduce the amount they claim from International/Debtor and thereby potentially benefit other creditors. This conceivable effect is sufficient to establish related-to jurisdiction under § 1334(b).[30]

---

[30] *See, In re Canion*, 196 F.3d at 586-87 (claim between two non-debtors that will potentially reduce the bankruptcy estate's liabilities produces an effect on the estate sufficient to confer related-to jurisdiction). Plaintiffs do not dispute the defendants' argument that *In re Canion* supports a finding of related-to jurisdiction in this case. Record document number 153, (continued...)

Plaintiffs also argued that the proofs of claim based on indemnification filed on January 18, 2013 in the bankruptcy by four defendants – Fletcher Asset Management, Duhallow Financial Services, Alphonse Fletcher, Jr., and Denis Kiely – do not support a finding of related-to bankruptcy jurisdiction. Plaintiffs asserted that there is: (1) no apparent connection between these proofs of claim and the scope of allegations in the Petition; and, (2) no basis to find that the outcome of their claims against these defendants will necessarily involve International/Debtor because no indemnification claim with merit had been made against International/Debtor at the time their Petition was filed.

These arguments are confusing and unsupported. A plain reading of the agreements supplied by the defendants show that International/Debtor's indemnification obligations depend on whether the defendants' actions were taken pursuant to the agreement and in the capacities set forth in the indemnification provisions. The four defendants filed their proofs of claim under these provisions asserting "a claim for indemnification in connection with any pending and future litigation."[31]  Such "future

---

[30] (...continued)
Supplemental Memorandum in Support of the Louisiana Funds' Motion to Remand, p. 5.

[31] Record document numbers 114-5 – 114-8, Exhibits K, L, M and N, respectively; record document numbers 149-1 and 149-2, Exhibits 1 and 2, declarations of Alphonse Fletcher, Jr. and Denis Kiely, respectively, and attached Exhibits V – Z.

litigation" arose when the plaintiffs filed their original Petition for Damages in May 2013 alleging that these defendants were liable for the loss of their investment and damages.  Therefore, if the outcome of this case results in a finding these defendants are liable and the plaintiffs recover from them, International/ Debtor's indemnity obligations asserted in the defendants' proofs of claim could conceivably result in an increase in the obligations of International/Debtor, causing a negative impact and effect on the administration of the bankruptcy estate.  This conclusion is supported by the decisions of the Fifth Circuit that have analyzed whether the court had jurisdiction under § 1334(b) based on indemnification rights asserted against the debtor.[32]

Plaintiffs asserted that the Second Circuit decision *In re Refco, Inc.*[33] supports their position that the defendants' alter ego and indemnification arguments do not establish related-to jurisdiction over this case.  *In re Refco* is not controlling or persuasive.  Plaintiffs asserted that the explicit holding of the

_____

[32] *See, In re El Paso Refinery, LP*, 302 F.3d 343, 348-49 (5th Cir. 2002)(third-party dispute between non-debtors had conceivable effect on the estate in light of the chain of indemnification provisions beginning with one of the parties and leading directly to the debtor); *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383 (5th Cir. 2010)(where purchaser of securities sued seller for fraud, and seller had agreement with debtor that included indemnity and hold harmless provisions, indemnity provisions were sufficient to establish related-to jurisdiction over suit between purchaser and seller).

[33] 505 F.3d 109 (2nd Cir. 2007).

court in the case "was that the bankruptcy court overseeing a master fund's bankruptcy will not accept jurisdiction of claims made by shareholders in feeder funds because it impedes the reorganization process for master funds," like International/Debtor.[34]  But this was not the court's holding.  The case had nothing to do with determining the existence of jurisdiction in general, or jurisdiction under § 1334(b). *In re Refco* involved the settlement of a preference action between the debtor and an investment company, Sphinx. Investors in Sphinx objected to the settlement.  The bankruptcy and district courts concluded, and the Second Circuit affirmed, that the investors did not have standing to object because they were not a party in interest under § 1109(b) of the Bankruptcy Code.  In its analysis of how broadly § 1109(b) could be interpreted, the court made the statements cited and relied on by the plaintiffs in their supplemental memorandum.[35] Because the facts and legal issues in *In re Refco* are entirely different than those presented in this case, neither the quoted language cited by the plaintiffs nor the holding and reasoning of the Second Circuit support the plaintiffs' position.

In summary, the defendants  demonstrated that the outcome of this proceeding could conceivably have an effect the liabilities of

---

[34] Record document number 153,  Supplemental Memorandum in Support of the Louisiana Funds' Motion to Remand, p. 3.

[35] *Id.*, pp. 9-10.

International/Debtor and the administration of the bankruptcy estate. Therefore, the defendants met their burden of establishing that subject matter jurisdiction existed at the time of removal based on 28 U.S.C. § 1334(b).

Plaintiffs' final memorandum in support of remand relied on recent events in International/Debtor's bankruptcy proceeding. Specifically, on March 28, 2014 the bankruptcy judge signed a Confirmation Order that confirmed the Trustee's Second Amended Plan of Liquidation Pursuant to Chapter 11.[36] Plaintiffs argued that several provisions of the order and plan establish additional reasons for the case to be remanded: (1) paragraphs 43 and 44 of the Confirmation Order and Section 10.6 of the Second Amended Plan allow the plaintiffs to assert any and all claims and defenses they have against any person or entity, other than International/ Debtor, the Estate or Trustee, in any federal or state court; and, (2) the indemnification claims of the Fletcher defendants are now

---

[36] Record document number 200, Plaintiffs' Supplemental Memorandum in Support of Motion to Remand, Exhibit 1, pp. 1-54 (Findings of Fact, Conclusions of Law and Order Confirming the Trustee's Second Amended Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code)(hereafter, "Confirmation Order"); Exhibit A, pp. 54-101 (Trustee's Second Amended Plan of Liquidation) (hereafter, "Plan").

The Liquidators also filed Chapter 15 bankruptcy petitions in the Southern District of New York. *See*, In re FIA Leveraged Fund (In Liquidation), Case No. 14-10093; In re Fletcher Income Arbitrage Fund Ltd. (In Liquidation), Case No. 14-10094; record document number 203, Defendants' Response to Plaintiffs' Supplemental Memorandum in Support of Motion to Remand, p. 2, fn. 2.

even more attenuated and remote because the order and plan subordinate these claims to all other creditors of the estate.

Relying on *In re Enron*, the defendants maintained that the court must determine if related-to jurisdiction exists at the time of removal.  If jurisdiction is established on removal, the recent Confirmation Order and Plan cannot divest the court of bankruptcy jurisdiction.  Defendants acknowledged that the Confirmation Order and Plan allow the plaintiffs to pursue claims against third parties in any jurisdiction, but argued that this general provision does not state that the plaintiffs' claims can only be heard in state court, or affect in any way the existence of federal jurisdiction or their right to remove the case.  Defendants also argued that even if recent events in the bankruptcy proceeding are considered, they in fact support a finding of jurisdiction under § 1334(b).  These events show that the plaintiffs are seeking to recover their investment loss in this case, while at the same time participating in a coordinated recovery strategy in the bankruptcy court to recover the same loss.  Furthermore, the foundation of International/Debtor's Plan is an Investor Settlement in which International/Debtor, Leveraged, Arbitrage and their Liquidators agreed to pool their claims against third parties for breach of contract, fraud, breach of fiduciary duty, negligence and similar torts, and these are essentially the same claims the plaintiffs brought against the defendants in their Petition.

Based on *In re Enron*, it is unnecessary to analyze whether or not the bankruptcy Confirmation Order and Plan support a finding of related-to bankruptcy jurisdiction.   Under *Enron* if related-to jurisdiction exists over pre-confirmation claims based on pre-confirmation activities at the time of removal, subsequent events such as plan confirmation do not divest the district court of bankruptcy jurisdiction.   At the time of removal this court had jurisdiction under § 1334(b), therefore, the Confirmation Order and Plan did not deprive the court of subject matter jurisdiction.

**Mandatory Abstention**

A party seeking mandatory abstention under § 1334(c)(2) bears the burden of establishing the following: (1) the claim has no independent basis for federal jurisdiction other than § 1334(b); (2) the claim is a non-core proceeding, i.e., it is related to a case under title 11, but does not arise under or in a case under title 11; (3) an action has been commenced in state court;[37] and (4) the action could be adjudicated timely in state court. *In re TXNB Internal Case*, *supra*; *In re Doctors Hosp. 1997, L.P.*, 351 B.R. 813, 846-847 (S.D.Tex. 2006).

Defendants argued the plaintiffs cannot meet their burden of establishing that the court must abstain under § 1334(b)(2).

---

[37] Statutory abstention applies to cases removed to federal court on the basis of bankruptcy jurisdiction.   *See*, *In re Southmark*, 163 F.3d at 929; *Sonnier v. HESCO, supra.*

According to the defendants, diversity is another basis for federal jurisdiction; this is a core proceeding that was filed in state court after International/Debtor filed bankruptcy, and the plaintiffs have not shown that the case can be timely adjudicated in state court.   Plaintiffs advanced the opposite arguments and maintained they have satisfied their burden of establishing the elements necessary for mandatory abstention.

Review of the parties' arguments in light of the applicable law shows that the plaintiffs have not met their burden on mandatory abstention.  Although the plaintiffs have established the first three elements, the plaintiffs have failed to demonstrate that the action can be timely adjudicated in state court.

**Basis of Federal Jurisdiction Other Than § 1334(b)**

Consistent with their Notice of Removal and arguments on the existence of diversity jurisdiction, the defendants asserted that absent bankruptcy jurisdiction under § 1334(b) the court would have subject matter jurisdiction based on diversity.   Therefore, defendants argued, the plaintiffs cannot establish mandatory abstention under § 1334(c)(2).  Similarly, the plaintiffs' position rested on their contention that there is no diversity jurisdiction for two reasons: (1) the Louisiana Pension Funds are not citizens of a state because they are "arms of the state"; and, (2) defendant Skadden has partners that are United States citizens domiciled in another country, and therefore Skadden cannot be a citizen of a

39

state under the diversity statute.

Based on the present record, complete diversity is lacking. Therefore, the first requirement for mandatory abstention is satisfied. Defendants acknowledged in their Notice of Removal that Skadden is not diverse because some of its partners are United States citizens domiciled abroad.[38] However, the defendants alleged that Skadden's citizenship should not be considered because Skadden was improperly joined based on a lack of personal jurisdiction.[39] Skadden filed a Motion to Dismiss for Lack of Personal Jurisdiction soon after removal.[40] On September 9, 2013, the district judge issued an order stating that it was proper and within its discretion under *Ruhrgas AG v. Marathon Oil Co.*,[41] to address subject matter jurisdiction before examining any motions to dismiss for lack of personal jurisdiction.[42] Therefore, no determination has been made on Skadden's Motion to Dismiss for Lack of Personal Jurisdiction. Because there is no diversity due to the presence of

---

[38] As a limited liability partnership Skadden's citizenship is determined by the citizenship of each of its partners. *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008); *Carden v. Arkoma Associates*, 494 U.S. 185, 110 S.Ct. 1015, 1021 (1990). An American citizen living abroad, is not a citizen of any state and cannot sue or be sued in federal court under diversity jurisdiction. *Coury v. Prot*, 85 F.3d 244 (5th Cir. 1996).

[39] Record document number 1, Notice of Removal, ¶ 15, p. 9.

[40] Record document number 17.

[41] 526 U.S. 574, 119 S.Ct. 1563 (1999).

[42] Record document number 144.

40

Skadden as a defendant, and no finding has been made the court lacks personal jurisdiction over Skadden, the court does not have diversity jurisdiction under § 1332(a).[43] Consequently, there is no independent basis for federal jurisdiction in this case other than § 1334(b).

**Core or Non-core Proceeding**

Defendants argued that the plaintiffs have not shown another requirement for mandatory abstention - that this is a non-core proceeding. In support of their position that this is a core proceeding, the defendants essentially relied on the same arguments they made in support of their claim that the court has bankruptcy jurisdiction under § 1334(b): (1) this proceeding may affect the property of International/Debtor being administered in the bankruptcy, because of the plaintiffs' alter ego allegations in the Petition and proofs of claim, and its position that the Fletcher-

---

[43] The other disputed issue relevant to diversity jurisdiction is whether two of the pension funds are "arms" or alter egos of the State of Louisiana. This is an issue because of the established principle that a state is not a citizen for diversity purposes, which also applies to an agency or entity that is an "arm" or alter ego of the state. *Moor v. County of Alameda*, 411 U.S. 693, 93 S.Ct. 1785 (1973). However, if the agency or entity is an independent one, separate and distinct from the state, it is a citizen of a state under the diversity statute. *Tradigrain Inc. v. Miss. State Port Authority*, 701 F.2d 1131 (5th Cir. 1983); *PYCA Industries, Inc. v. Harrison County Waste Water Management*, 81 F.3d 1412, 1416 (1996). There is no diversity jurisdiction based on Skadden's presence in the case. Therefore, it is unnecessary to analyze and determine whether the Firefighters' Retirement System or the Municipal Employees' Retirement System of Louisiana are "arms" or alter egos of the state.

related entities and defendants should be treated as a single entity; and (2) the resolution of the plaintiffs' claims in this case will necessarily affect the allowance or disallowance of the plaintiffs' claims against the International/Debtor, since the plaintiffs seek recovery of the same loss in this case and the bankruptcy proceeding.   In addition, the defendants argued that this action is arguably a core matter because it falls within several categories that Congress has determined are core under 28 U.S.C. § 157(b)(2)(A),(B) and (O), which provides that core proceedings include but, are not limited to, matters concerning the administration of the estate, the allowance or disallowance of claims against the estate, and other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor relationship.   28 U.S.C. § 157(b)(2)(A), (B) and (O).

Plaintiffs argued that this case does not fall within the parameters for core proceedings set out by the Fifth Circuit in *Matter of Wood.*

Plaintiffs' arguments are persuasive.   In *Matter of Wood*, the court analyzed 28 U.S.C. § 157(b)(2), which the court noted was Congress's response to *Marathon v. Northern Pipelines.*[44]   To remedy the unconstitutional aspects of the 1978 Bankruptcy Act, Congress in 1984 essentially reenacted the 1978 Act but divided the

---

[44] 458 U.S. 50, 102 S.Ct. 2858 (1982).

bankruptcy court jurisdictional grant into "core" proceedings, over which the bankruptcy courts exercise full judicial power and non-core proceedings over which they exercise limited power.  Section 157(b)(2) did not define core proceedings, but provided a non-exclusive list of examples.  In *Matter of Wood*, the court specifically addressed § 157(b)(2)(A), (B) and (O).  The court stated that these examples could not be given a broad reading, otherwise the entire range of proceedings under bankruptcy jurisdiction would fall within the scope of core proceedings.  In its analysis the court ultimately defined core proceedings as proceedings that arise under Title 11, or arise in a case under Title 11.  Proceedings arise under Title 11 if they are proceedings that involve a cause of action created or determined by a statutory provision of Title 11.  Proceedings arising in a case under Title 11 is a reference to those administrative matters that arise only in bankruptcy cases, or stated another way, the proceedings are not based on any right expressly created by Title 11, but they would have no existence outside of the bankruptcy.

The court summarized its definition of non-core proceedings as follows:

> If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be related to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an "other-wise related" or non-core proceeding.

Given the distinctions between core and non-core proceedings

43

explained by the Fifth Circuit in *Matter of Wood*, the plaintiffs' claims against the defendants in this case are not core proceedings.  Plaintiffs' Petition did not invoke any substantive rights provided by Title 11, and the nature of it is not such that it could arise only in the context of a bankruptcy case. Plaintiffs have filed proofs of claim in the bankruptcy against International/Debtor, but they alleged only state law causes of action against non-debtors in their Petition.  The essential issue presented by their Petition is whether the non-debtor defendants are liable to the plaintiff under various state laws.  Because the claims asserted by the plaintiffs in their Petition can clearly stand alone from the bankruptcy case, they are not core proceedings.[45]

**Timely Adjudication in State Court**

Plaintiffs relied on the following assertions to meet their burden of establishing that this case can be timely adjudicated in a state forum: (1) the state district court has special knowledge of the prescription issues and the standard of conduct for claims under the Louisiana securities law; and, (2) an expedited writ practice is allowed under Louisiana Code of Civil Procedure Article 2201 and Rule 4-3 of the Uniform Rules of Louisiana Courts of Appeal.  Plaintiff argued that because of these two factors the

---

[45] *In re Southmark Corp., supra*.

44

state court would provide the quickest and most efficient way to adjudicate their claims.  Plaintiffs also asserted that "it cannot be disputed that the transfer of this matter to bankruptcy court would prolong administration of the estate."[46]

Plaintiffs' arguments are unsupported and unpersuasive. Although this case has a complex factual background, the state law claims alleged in the plaintiffs' petition are not novel.  These types of state law claims are regularly addressed by the district courts in diversity cases, which are *Erie*-bound to follow the state law in their analysis and findings.  Thus, there is no basis for the plaintiffs' claim that the state court has some special knowledge about prescription and the standards of conduct under state law.

A party moving for mandatory abstention bears the burden of establishing that claims can be timely adjudicated in the alternate state forum, and must provide the court with more than a naked assertion that the action can be timely adjudicated in state court. *Id.; In re NC12, Inc.*, 478 B.R. 820, 840 (S.D.Tex. 2012).  The expedited writ practice cited by the plaintiffs is the provision for discretionary supervisory review which may be granted by the state appellate court.  Plaintiffs failed to explain how this discretionary state court procedure could possibly affect the speed

---

[46] Record document number 153, Supplemental Memorandum in Support of the Louisiana Funds' Motion to Remand, p. 27.

and efficiency of the state court in adjudicating the claims.[47] Plaintiffs unsupported assertions are speculation, and are insufficient to carry its burden to show this case can be timely adjudicated in state court.

In summary, the plaintiffs failed to establish all of the statutory requirements for mandatory abstention under § 1334(c)(2).

**Permissive Abstention**

The final issue is whether the court should exercise its discretion to abstain and remand under § 1334(c)(1) and § 1452(b). The court has discretion to abstain from deciding either core or non-core matters under § 1334(b)(1) if the interests of justice, comity, or respect for state law require it. *Matter of Gober*, *supra*.

Plaintiffs argued that even if the court has related-to bankruptcy jurisdiction and abstention is not statutorily mandated, the court should exercise its discretion to abstain and remand under § 1452(b). Plaintiffs arguments for discretionary abstention and remand focused on the interests of comity and respect for state law, the prejudice they claim will result if the case is not

---

[47] Plaintiff offered no information or evidence related to the backlog of the state district court's or appellate court's calendar relative to that of this court. *See*, *In re Trimjoist Corp.*, *supra*; *In re Lorax Corp.*, 295 B.R. 83, 93 (N.D.Tex. 2003). It could be persuasively argued that repeated applications to the state appellate courts to address non-dispositive disputes would actually delay the ultimate disposition of the plaintiffs' claims.

remanded, and the tenuous connection between this case and the bankruptcy proceeding.  Plaintiffs argued that the most important factor is to allow state courts to handle state court issues. Abstention and remand in this case would serve the interest of comity by giving Louisiana courts the opportunity to enforce its fraud and security laws for the protection of constitutionally mandated public employee pension funds.  Plaintiffs also argued that they will be prejudiced if the case is not remanded and ultimately transferred to the New York district or bankruptcy court for two reasons:  (1) they have requested a jury trial and do not consent to a jury trial in the bankruptcy court, and the bankruptcy court would not have the authority to enter final orders and judgments because of the Supreme Court decision in *Stern v. Marshall*;[48] and, (2) if the case must be tried in New York and not a Louisiana court, it will result in greatly increased litigation

---

[48] _____ U.S. _____, 131 S.Ct. 2594 (2011).  In *Stern* the Supreme Court held that Article III of the Constitution prohibits Congress from giving a bankruptcy court authority to finally adjudicate core claims as defined under 28 U.S.C. § 157(b), when those claims are state law claims between private parties, that do not flow from the bankruptcy scheme and are not a matter of public right.  The bankruptcy court cannot finally adjudicate these claims, but can only submit proposed findings of fact and conclusions of law to the district court.  In a decision rendered this month in *Executive Benefits Ins. Agency v. Arkinson*, 573 U.S. _____; 2014 WL 2560461 (U.S. June 9, 2014), the Court held that when a *Stern* claims arises, it is to be treated the same as a non-core claim - the bankruptcy court hears the proceeding and submits proposed findings of fact and conclusions of law to the district court for *de novo* review and entry of judgment.

costs and lessen the personal impact of the defendants' wrongs.

Finally, with regard to the relationship between this case and the bankruptcy, the plaintiffs argued that all the defendants here are non-debtors, and the claims against the non-Fletcher defendants (Skadden, Grant Thornton, and the Citco defendants) are not related to the bankruptcy and will dominate the trial.   Plaintiffs also maintained that because the bankruptcy court entered a Confirmation Order on March 28, 2014, the connection between this proceeding and the bankruptcy case has become even more attenuated.

Defendants argued that issues of comity are not implicated because this case was removed quickly, before the state court held any hearings or issued any rulings, and the case  does not involve any novel, unsettled or complex issues of state law.   Defendants noted that the plaintiffs' right to a jury trial is not prejudiced because the case can proceed in bankruptcy court until it is ready for trial, at which time the district court can withdraw the reference and conduct the trial.   Defendants also argued the plaintiffs' claims of prejudice, because of increased litigation costs, are exaggerated given that the plaintiffs filed proofs of claim and are already litigating in the bankruptcy proceeding.   On the issue of discretionary abstention and remand the defendants also relied on the same arguments they urged in support  related-to bankruptcy jurisdiction.   Defendants maintained that even in light of the Confirmation Order and the Plan, the claims in this case are

so connected to International/Debtor's bankruptcy that interests of efficiency and judicial economy weigh against remand and favor transfer to the bankruptcy court.

Considering the present record and all the relevant factors, the plaintiffs' arguments are convincing. The interests of justice and comity will be served if the court abstains and remands this case to state court. As explained above, when the case was removed this court had related-to bankruptcy jurisdiction. However, at this time it is the only basis for this court's subject matter jurisdiction over this non-core proceeding. Moreover, several months ago the bankruptcy court entered its Confirmation Order on the Plan. On confirmation of the Plan, the bankruptcy estate ceased to exist.[49] While this does not divest the court of subject matter jurisdiction, this fact and the provisions of the Confirmation Order and Plan support equitable remand.

Part of the Plan involves an Investor Settlement entered into by the Investor Settlement Parties, which are the bankruptcy trustee, the Liquidators, and a Massachusetts public retirement fund. These parties have pooled their claims against the insiders and affiliates of International/Debtor and the other persons and entities who were allegedly involved in the fraud leading to the

---

[49] *See*, *In re Enron Corp. Securities, supra.*

49

plaintiffs' $100 million investment loss.[50]   In the Plan the
settling parties agreed to cooperate with the bankruptcy trustee,
the Plan administrator and the advisory board to prosecute, settle
and resolve the pooled claims.[51]   However, the plaintiffs are not
a part of the Investor Settlement.   Except for International/
Debtor, the Estate and the Trustee, the Plan did not waive, release
or enjoin any claims the plaintiffs have against any party.   As
cited in the plaintiffs' supplemental memorandum, the Confirmation
Order specifically provides that the plaintiffs remain free to
assert any and all claims and defenses they have against any person
or entity, in any state, federal, foreign court, or other

---

[50] Plan, §§ 2.62, 2.63, 2.77, 8.1.

[51] A list of the pooled claims is attached to the Plan as
Exhibit A.   The attachment states that the Investor Settlement
Parties are pooling their claims against the persons and entities
listed and all of their respective parents, subsidiaries,
affiliates, officers, directors, agents, employees,
representatives, financial advisors, accountants and attorneys.
The persons and entities listed as those who the Investor
Settlement Parties would have claims against were Alphonse Fletcher
Jr. CI Funds, Citco, Duhallow, Eisner, Fletcher Asset Management,
Insiders of the Funds or any Fletcher-Related entity, Grant
Thornton, Quantal, RF Services, Richcourt Funds, Skadden, SS&C and
Soundview Debtors.
  Plaintiffs are not a part of the Investor Settlement and under
the Plan they are allowed to bring claims against any of these
parties in any court.   Many of the parties listed in the Pooled
Claims of the Investor Settlement Parties are defendants in this
case, such as Alphonse Fletcher Jr. Fletcher Asset Management,
Grant Thornton, Skadden, Duhallow Financial Services, Denis Kiely,
and the numerous Citco-related entities.

appropriate forum.[52]

The confirmation of the Plan and these provisions are significant because they establish that the claims in this case no longer affect the administration of International/Debtor's estate. Confirmation of the Plan ended the estate, and among its many provisions: (1) subordinated/extinguished and settled the indemnification proofs of claims filed in the bankruptcy by four defendants in this case - Fletcher Asset Management, Alphonse Fletcher, Jr., Denis Kiely and Duhallow Financial Services;[53] and, (2) settled the plaintiffs' proofs of claim[54] and allowed the plaintiffs to pursue their claims against any non-debtors.[55] Essentially, the Plan allows the plaintiffs to take the action they were taking when the defendants removed the case to this court - filing suit in state court based on state law claims against

---

[52] Record document number 200, Plaintiff's Supplemental Memorandum in Support of Motion to Remand, citing the Confirmation Order, ¶¶ 43 and 44, and the Plan, § 10.6.

[53] Under the Confirmation Order and Plan, these four along with some other parties were classified as insiders/affiliates of the Debtor and included in Classes 5 and 6.  The Confirmation Order stated that holders of claims in these classes engaged in specific instances of inequitable conduct.  Confirmation Order, ¶¶ 58, 79-83 (including footnote 2 on page 27); Plan, Articles IV, V, VI, and VIII, pp. 11-15 and 22.

[54] Plaintiffs settled their proofs of claim for $3 million. Plan, Article VI, p. 14.

[55] In addition to the provisions of the Confirmation Order and the Plan cited by the plaintiffs, and provisions cited in the above footnotes, see also Confirmation Order, ¶¶ 32-35, 53, 99, 103, 109.

multiple non-debtor defendants they assert are liable for their $100 million investment loss.

Considering these developments, it would not make good sense to retain jurisdiction over a case that no longer affects the estate, and asserts claims which the bankruptcy court has permitted the plaintiffs to pursue in any forum.  Furthermore, if the case is not remanded and is ultimately transferred to the district or bankruptcy court in New York, the resolution of the plaintiffs' claims in the case may be delayed or complicated by the plaintiffs' right to a jury trial and the limited authority of the bankruptcy court in non-core proceedings.  The confirmation of International/ Debtor's Plan, plus these additional reasons, supports finding that the interests of justice are better served by an equitable remand of this case to the state court.

The interests of comity also support permissive abstention and remand on equitable grounds.  State law issues do not just predominate in this case - they are the only issues.  Although both the federal and state courts can both interpret state laws, no one can dispute that the state has an interest in its courts interpreting its own laws. Other factors that courts consider in determining whether permissive abstention is appropriate are either neutral, or are not applicable to the facts of this case.  For the reasons explained above this court should abstain from exercising its related-to bankruptcy jurisdiction in this case and remand it

to state court as provided in 28 U.S.C. § 1452(b).[56]

**Costs and Expenses under 28 U.S.C. § 1447**

Plaintiffs also moved for an award of attorney's fees and costs under 28 U.S.C. § 1447(c).[57]   An award under § 1447(c) requires a showing that at the time of removal the defendants lacked an objectively reasonable basis for seeking removal.  As the analysis above demonstrates, at the time of removal the defendants had an objectively reasonable basis to remove the case based on related-to jurisdiction under 28 U.S.C. § 1334(b).  Moreover, the recommendation that the case be remanded is based on the factors of permissive abstention and equitable grounds, not because the court lacks subject matter jurisdiction.  Therefore, under the standard governing the award of costs and expenses under § 1447(c), a finding that the defendants lacked  objectively reasonable grounds to believe that removal was proper is clearly not warranted. The plaintiffs' request for an award of fees and costs incurred in connection with the Motion to Remand should be denied.

---

[56] The list of factors the courts consider to determine whether permissive abstention and equitable remand are appropriate are not exhaustive, and a formulaic balancing of the factors and equities is not required.  Section 1452(b) permits a court to remand on any equitable ground whether or not it is listed.  The presence of any equitable ground is sufficient.  *Landry v. Exxon Pipeline Co.,* 260 B.R. 769, 802 (M.D. La. 2001).

[57] Plaintiffs did not present any facts to support an award of any specific amount of costs and fees they incurred in connection with filing the motion.

**RECOMMENDATION**

It is the recommendation of the magistrate judge that, pursuant to 28 U.S.C. § 1334(c)(1) and 28 U.S.C. § 1452(b), the Motion to Remand filed by the plaintiffs be granted. It is further recommended that the plaintiffs' request for costs and expenses under 28 U.S.C. § 1447(c) be denied.

Baton Rouge, Louisiana, June 17, 2014.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

ATTACHMENT 2

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


FIREFIGHTERS' RETIREMENT
SYSTEM, ET AL                          CIVIL ACTION

VERSUS                                 NUMBER 14-182-SDD-SCR

EISNERAMPER, LLP, ET AL


**NOTICE**

  Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

  In accordance with 28 U.S.C. §636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

  ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, August 18, 2015.


STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

FIREFIGHTERS' RETIREMENT
SYSTEM, ET AL                          CIVIL ACTION

VERSUS                                 NUMBER 14-182-SDD-SCR

EISNERAMPER, LLP, ET AL

## <u>MAGISTRATE JUDGE'S REPORT</u>

Before the court is a Motion to Remand filed by plaintiffs, the Firefighters' Retirement System ("FRS"), Municipal Employers' Retirement System of Louisiana ("MERS"), and New Orleans Firefighters' Pension and Relief Fund ("NOFPF"), (hereafter, collectively, "plaintiffs"). Record document number 10. The motion is opposed.[1]

Plaintiffs filed a Petition for Damages in state court against defendants EisnerAmper LLP (Eisner US) and EisnerAmper (Cayman) Ltd. (Eisner Cayman), (collectively, hereafter, "EisnerAmper"). In their Petition the plaintiffs alleged claims against EisnerAmper based on Louisiana state laws: (1) the Louisiana Securities Act; (2) holder claims; (3) fraud; (4) negligence; (5) third party beneficiary; (6) negligent misrepresentation; and, (7) the Louisiana Unfair Trade Practices Act. Plaintiffs did not allege any claims under federal law against EisnerAmper.

---

[1] Record document numbers 11. Plaintiffs also relied on the memoranda they filed in CV 13-373-SDD-SCR. Record document numbers 10-3 and 10-4.

EisnerAmper removed the petition to this court based on the following grounds: (1) jurisdiction under 28 U.S.C. § 1334(b), which provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11"; and (2) diversity jurisdiction under 28 U.S.C. § 1332(a).[2]

Plaintiffs moved to remand based on a lack of subject matter jurisdiction, and alternatively, based on mandatory and permissive abstention under 28 U.S.C. § 1334(c)(1) and (2) for actions related to bankruptcy cases.

For the reasons explained below, the plaintiffs' Motion to Remand should be denied.

## Background

This case arises out of the same facts and series of events giving rise to the litigation filed by the plaintiffs in *Firefighters' Retirement System, et al. v. Citco Group Limited, et al.*, CV 13-373-SDD-SCR.[3]  The background facts set forth in CV 13-

---

[2]  The removal statutes that correspond to these grants of federal jurisdiction are 28 U.S.C. §§ 1441(a) and 1452(a).

[3]  The Magistrate Judge's Report issued in CV 13-373-SDD-SCR recommended finding that jurisdiction existed under § 1334(b), but that the court should exercise permissive abstention under § 1334(c)(1).  CV 13-373-SDD-SCR, record document number 204.  The question of whether the court had diversity jurisdiction was not addressed.  Rejecting the objections of several defendants, the district judge accepted and adopted the report and recommendation and ordered remand.  An appeal was filed.  USCA Case Number 14-
(continued...)

373-SDD-SCR will not be repeated and are incorporated by reference in this report.  The following summary includes only information pertinent to the plaintiff's allegations against EisnerAmper.

Plaintiffs alleged that EisnerAmper executed an engagement letter with FIA Leveraged Fund (hereafter, "Leveraged") to perform the audit of Leveraged for the year ending December 31, 2009. However, EisnerAmper never completed the audit because it became aware that the plaintiffs' redemption right had been triggered, which would have caused a run on the other Fletcher funds. Plaintiffs alleged that EisnerAmper, rather than informing the plaintiffs and issuing its audit or withdrawing from the audit, did nothing, which was a breach its duty of independence required by generally accepted auditing standards.  According to the plaintiff's allegations, EisnerAmper was more concerned about Fletcher[4] and not causing an adverse impact on the other related Fletcher funds that it also audited.

---

[3](...continued)
30857.  The Fifth Circuit issued its opinion August 6, 2015, which it substituted for its initial opinion that was withdrawn. *Firefighters' Retirement System v. Citco Group Ltd.,* ____ F.3d ____, 2015 WL 4666010 (5th Cir. August 6, 2015).  Rehearing was denied.
    The Fifth Circuit reversed the district court's ruling and remanded the case for further proceedings, holding that the plaintiff's removed state court action was related to Chapter 15 bankruptcy cases.  Therefore, under 28 U.S.C. § 1334(c)(1) the district court was prohibited by statute from permissively abstaining and equitably remanding the action to state court.

[4] This is a reference to defendant Alphonse "Buddy" Fletcher, Jr., who is a party in CV 13-373-SDD-SCR.

In July 2011 the plaintiffs and EisnerAmper went to a scheduled meeting in New York to discuss the issuance of the 2009 Leveraged audit.   Plaintiffs alleged that at the meeting EisnerAmper disclosed that the plaintiffs' redemption right had been triggered, but failed to disclose other material defaults and events.   Plaintiffs were told that the 2009 Leveraged audit would not be issued unless they executed a waiver of the redemption right. Plaintiffs executed the waiver, but EisnerAmper never issued the audit.   Plaintiffs claimed that if EisnerAmper had timely disclosed the defaults and misuse of the offering proceeds, and timely issued or withdrawn from the 2009 Leveraged audit, they could have redeemed their shares, prevented Leveraged from making other distributions to other shareholders in Leveraged and the Fletcher Income Arbitrage Fund, Ltd., and thereby mitigated or eliminated their losses.   Instead EisnerAmper did nothing and allowed the Fletcher scheme to continue even though it knew or should have known there was substantial doubt about the ability of Leveraged to continue as a viable entity.   Plaintiffs alleged that as a result of EisnerAmper's acts and omissions and violations of generally accepted accounting and auditing standards, it is solidarily liable with the other defendants in CV 13-373-SDD-SCR for the loss of the plaintiff's original investment (in the Series N shares), other economic damages and attorney's fees.

4

## Applicable Law

### General Principles

The removing party bears the burden of establishing federal jurisdiction over a state court suit. *Carpenter v. Wichita Falls Independent School Dist.*, 44 F.3d 362, 365 (5th Cir. 1995). As with removal under the general provision of § 1441(a), the existence of subject matter jurisdiction is determined as of the time of removal. *In re Bissonnet Investments* LLC, 320 F.3d 520, 525 (5th Cir. 2003); In *re Legal Xtranet, Inc.*, 453 B.R. 699, 703-04 (W.D. Tex. 2011). Thus, if "related to" jurisdiction exists at the time of removal, subsequent events do not divest the district court of subject matter jurisdiction. *In re Enron Corp. Securities*, 535 F.3d 325, 336 (5th Cir. 2008). Generally, the "well-pleaded complaint" rule applies only to statutory "arising under" cases. *American National Red Cross v. S.G.,* 505 U.S. 247, 258, 112 S.Ct. 2465 (1992). Therefore, the "well-pleaded complaint" rule is used to determine whether there is "arising under" jurisdiction in bankruptcy, but it is not applicable in "related to" bankruptcy removal cases. *In re Enron Corp. Securities, Derivative & ERISA Litigation*, 511 F.Supp.2d 742, 764 (S.D. Tex. 2005); *In re Brooks Mays Music Co.,* 363 B.R. 801, 814-15 (N.D. Tex. 2007). Given the test for related to jurisdiction – whether the outcome of the action could conceivably have an effect or impact on the estate being administered - it is clear that the

5

related to test is one that focuses on the potential outcome or end result of the litigation rather than on the face of the complaint. *Brooks Mays Music Co.*, 363 B.R. at 815.

**Subject Matter Jurisdiction - Diversity under 28 U.S.C. § 1332**

Since the enactment of the diversity statute, it has been interpreted to require complete diversity of citizenship. *Carden v. Arkoma Associates,* 494 U.S. 185, 110 S.Ct. 1015, 1017 (1990). In *Carden*, the Supreme Court held that a federal court must look to the citizenship of each member of a partnership - both its limited and general partners - to determine whether there is complete diversity. *Id.,* at 1021.

Under the diversity statute, § 1332(a), state citizenship is synonymous with domicile. For this reason, a United States citizen who is domiciled abroad is not a citizen of any state of the United States, and cannot sue or be sued in federal court on the basis of diversity jurisdiction. *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996).

A state is not a citizen of any state for purposes of diversity jurisdiction. *Moor v. County of Alameda*, 411 U.S. 693, 717, 93 S.Ct. 1785, 1796-97 (1973). This rule also applies if a suit is brought against an agency that is the alter ego or arm of the state - federal jurisdiction is lacking. *PYCA Industries, Inc. v. Harrison County Waste Water Management,* 81 F.3d 1412, 1416 (5th

6

Cir. 1996), citing, *Tradigrain, Inc. v. Mississippi State Port Authority,* 701 F.2d 1131 (5th Cir. 1983).  However, if the agency is an independent one, separate and distinct from the state, the district court can properly assert jurisdiction over the case.  *Id.*

If the agency's status is unclear the court looks to all available sources for guidance.  The fact that the enabling legislation describes it as a political subdivision does not make its status clear. A state statute characterizing the agency as an arm of the state is only one factor to consider in the balancing test.  *PYCA Industries, Inc.*, 81 F.3d at 1416, citing, *McDonald v. Board of Mississippi Levee Comm'rs*, 832 F.2d 901, 906 (5th Cir.1987).[5]  As was explained in *Tradigrain*, there are many factors to consider in determining whether an agency is the alter ego of the state, including: (1) whether state statutes and case law characterize the agency as an arm of the state; (2) the source of entity funding; (3) the degree of local autonomy; (4) whether the entity is concerned primarily with local, as opposed to statewide, problems; (5) the authority to sue and be sued in its own name; and, (6) the right to hold and use property.  Typically, some factors will suggest that the agency is a citizen, while others

_____

[5] The *McDonald* factors are technically a test for Eleventh Amendment immunity. However, the analysis of an agency's status is virtually identical whether the case involves determination of immunity under the Eleventh Amendment or a determination of citizenship for diversity jurisdiction.  *Tradigrain*, 701 F.2d at 1132.

will suggest that it is the alter ego of the state.  *Id.*

**Subject Matter Jurisdiction - Related to Bankruptcy under 28 U.S.C. § 1334**

Under 28 U.S.C. § 1334(a) the district court has original and exclusive jurisdiction over all cases under Title 11.  Under § 1334(b) the district courts have original but not exclusive jurisdiction over all civil proceedings arising under Title 11 or arising in or related to cases under Title 11.  Thus, § 1334 provides jurisdiction in four types of matters: (1) cases under Title 11; (2) civil proceedings arising under Title 11; (3) civil proceedings arising in cases under Title 11; and (4) civil proceedings related to cases under Title 11.  *In re Matter of Wood*, 825 F.2d 90, 92 (5th Cir. 1987).  The phrase "under Title 11" refers to the bankruptcy proceeding itself.  The phrase "arising under Title 11, or arising in or related to cases under Title 11" identifies, collectively, a broad range of matters subject to bankruptcy jurisdiction.  The phrase "arising under Title 11" defines proceedings that involve a cause of action created or determined by a statutory provision of Title 11.  The terms "arising in...cases under Title 11" refers to administrative matters that arise only in bankruptcy cases.  *Id.*

"Related to" is a term of art.  *In re Canion,* 196 F.3d 579, 585 (5th Cir. 1999).  To determine whether a matter falls within general "related to" jurisdiction, it is necessary only to

8

determine whether a matter is at least related to the bankruptcy. *In re Bass,* 171 F.3d 1016, 1022-23 (5th Cir. 1999).[6]   Matters "related to cases under Title 11," refers to a much broader category of proceedings.   For purposes of bankruptcy jurisdiction, the phrase has a causal component.   For bankruptcy jurisdiction to exist based on a case being related to a case under Title 11, the proceeding must be capable of causing an effect on a bankruptcy estate.   *Id.*   Thus, "a proceeding is related to a bankruptcy if the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."   State another way, an action is related to a bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts the handling and administration of the debtor's estate.   *Id.; In re Walker*, 51 F.3d 562, 569 (5th Cir. 1995); *In re TMT Procurement Corp.,* 764 F.3d 512, 526 (5th Cir. 2014).   For jurisdiction to exist, the anticipated outcome of the action must both alter the rights, obligations, and choices of action of the debtor, and have an effect on the administration of the estate.   *Id.*   The law is well established that when testing "related to" jurisdiction, an effect

---

[6] For purposes of determining whether a particular matter falls within bankruptcy jurisdiction, it is not necessary to distinguish between proceedings arising under, arising in a case under, or related to a case under title 11.   It is necessary only to determine whether a matter is at least related to the bankruptcy. *Matter of Wood*, 825 F.2d at 93.

is not required to be certain.  Certainty, or even likelihood, of such an effect is not a requirement.  Rather, jurisdiction will exist based on a finding of any conceivable effect.  *In re Canion*, 196 F.3d at 587.

The exercise of jurisdiction over cases related to bankruptcy cases is primarily intended to encompass tort, contract, and other legal claims by and against the debtor, claims that, were it not for bankruptcy, would be ordinary stand-alone lawsuits between the debtor and others but which § 1334(b) allows to be forced into bankruptcy court so that all claims by and against the debtor can be determined in the same forum.  *In re Zale Corporation*, 62 F.3d 746, 751 (5th Cir. 1995). Another purpose is to force into the bankruptcy court those suits to which the debtor need not be a party but which may affect the amount of property in the debtor's estate.  *Id.* at 752.

Nevertheless, "related to" jurisdiction is not limitless. "[A]s a dispute becomes progressively more remote from the concerns of the body of federal law claimed to confer jurisdiction over it, the federal interest in furnishing the rule of decision for the dispute becomes progressively weaker."  *Id.; Zerand-Bernal Group, Inc. v. Cox*, 23 F.3d 159, 162 (7th Cir. 1994).  Those cases in which the exercise of "related to" jurisdiction over third-party actions is upheld do so because the subject of the third-party dispute was property of the estate or because the dispute over the

10

asset would have an effect on the estate. *In re Zale,* 62 F.3d at 753.[7]   Shared facts between the third-party action and a debtor-creditor conflict do not, in and of themselves, suffice to make the third-party action related to the bankruptcy.   Judicial economy alone also does not justify the exercise of "related to" jurisdiction over an otherwise unrelated suit.   It is the relationship of the dispute to the estate, and not the party to the estate, that establishes jurisdiction. *In re Zale,* 62 F.3d at 753-755.

**Mandatory and Permissive Abstention**

If the court has jurisdiction under § 1334(b) the next issue that must be addressed is abstention - permissive abstention under 28 U.S.C. § 1334(c)(1) and mandatory abstention under § 1334(c)(2).

Mandatory abstention is based on § 1334(c)(2), which provides as follows:

Upon timely motion of a party in a proceeding based upon

---

[7] *See*, *In re Canion*, *supra*, citing, *Owens Illinois, Inc. v. Rapid American Corp ( In re Celotex Corp.)*, 124 F.3d 619, 626 (4th Cir.1997) (finding "related to" jurisdiction when a creditor's claim against a non-debtor would reduce its claim in bankruptcy); *Kaonohi Ohana, Ltd. v. Sutherland*, 873 F.2d 1302, 1306-07 (9th Cir. 1989) (upholding "related to" jurisdiction over third-party action as specific performance remedy in third-party action would reduce damages in breach of contract claim against bankruptcy estate); *National Union Fire Ins. Co. v. Titan Energy, Inc.*, 837 F.2d 325, 329 (8th Cir. 1988) (holding that a coverage dispute between the debtor's insurance company and a creditor was "related to" the bankruptcy as a finding of coverage would reduce the claims against the estate); *Carr v. Michigan Real Estate Ins. Trust (In re Michigan Real Estate Trust)*, 87 B.R. 447 (E.D.Mich. 1988).

a State law claim or State law cause of action, related
to a case under title 11 but not arising under title 11
or arising in a case under title 11, with respect to
which an action could not have been commenced in a court
of the United States absent jurisdiction under this
section, the district court shall abstain from hearing
such proceeding if an action is commenced, and can be
timely adjudicated, in a State forum of appropriate
jurisdiction.

The Fifth Circuit has interpreted this provision to mandate
federal court abstention where: (1) the claim has no independent
basis for federal jurisdiction, other than § 1334(b); (2) the claim
is a non-core proceeding; (3) an action has been commenced in state
court; and (4) the action could be adjudicated timely in state
court. *Schuster v. Mims (In re Rupp & Bowman)*, 109 F.3d 237, 239
(5th Cir.1997); *In re TXNB Internal Case*, 483 F.3d 292, 300 (5th
Cir. 2007); *In re Southmark Corp.,* 163 F.3d 925, 929 n.2 (5th
Cir.), *cert denied*, 527 U.S. 1004, 119 S.Ct. 2339 (1999).

Permissive abstention is based on § 1334(c)(1), which provides
as follows:

Nothing in this section prevents a district court in the
interest of justice, or in the interest of comity with
State courts or respect for State law, from abstaining
from hearing a particular proceeding arising under title
11 or arising in or related to a case under title 11.

Thus, the court in its discretion may abstain from deciding
either core or noncore proceedings under § 1334(c)(1), if the
interests of justice, comity or respect for state law so require.
*Matter of Gober*, 100 F.3d 1195, 1206 (5th Cir.  1996). This
permissive abstention provision is implemented in conjunction with

12

the bankruptcy jurisdiction removal statute, which provides that
"[t]he court to which such claim or cause of action is removed may
remand such claim or cause of action on any equitable ground." 28
U.S.C. § 1452(b).

The Fifth Circuit listed eight considerations for equitable
remand in *Brown v. Navarro,* 743 F.2d 1069, 1076 fn. 21 (5th Cir.
1984). They are: (1) forum non conveniens; (2) if the civil action
has been bifurcated by removal, the entire action should be tried
in the same court; (3) whether a state court is better able to
respond to questions involving state law; (4) the expertise of a
particular court; (5) duplicative and uneconomic effort of judicial
resources in two forums; (6) prejudice to the involuntarily removed
parties; (7) comity considerations; and, (8) a lessened possibility
of an inconsistent result. *Id.; In re Johnson,* 506 B.R. 233, 241
(M.D.La. 2014).

When the issue is equitable remand and the appropriateness of
permissive abstention under § 1334(c)(1), some district and
bankruptcy courts cite these eight factors, others cite a list of
14 factors which include the requirements for mandatory abstention,
and some cite both sets of factors. The 14 factors are: (1) the
effect or lack thereof on the efficient administration of the
estate if the court decides to remand or abstain; (2) extent to
which state law issues predominate over bankruptcy issues; (3)
difficult or unsettled nature of applicable law; (4) presence of

13

related proceeding commenced in state court or other non-bankruptcy proceeding; (5) jurisdictional basis, if any, other than § 1334; (6) degree of relatedness or remoteness of proceeding to main bankruptcy case; (7) the substance rather than the form of an asserted core proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of the court's docket; (10) the likelihood that the commencement of the proceeding in the [district] court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; (12) the presence in the proceeding of non-debtor parties; (13) comity; and, (14) the possibility of prejudice to other parties in the action. *Regal Row Fina, Inc. v. Washington Mutual Bank*, 2004 WL 2826817, 8-9 (N.D.Tex., Dec. 9, 2004, N.D.Tex.); *In re Ballard*, 2012 WL 4162382 (Bkrtcy. S.D. Tex., Sept. 19, 2012); *Sonnier v. Hesco Bastion USA, LLC*, 2013 WL 5350853 (M.D.La., Sept. 23, 2013); *In re J. Moss Investments,* Inc., 2012 WL 2150346 (Bkrtcy. S.D. Tex., 2012); In *re Trimjoist Corp.*, 2013 WL 3934368 (Bkrtcy. N.D. Miss., July 30, 2013).

The Fifth Circuit held in *Firefighters' Retirement System v. Citco Group Ltd.,* that a district court may not permissively abstain from exercising jurisdiction in proceedings related to Chapter 15 bankruptcy cases. Furthermore, §§ 1334(c)(1) and 1452(b) must be read *in pari materia* and the result is that this

14

prohibition against abstention also applies to bar equitable remand.

**Costs and Expenses under 28 U.S.C. § 1447**

Plaintiffs also requested an award of cost and actual expenses including attorney's fees under 28 U.S.C. § 1447(c).

There is no automatic entitlement to an award of attorney fees under § 1447(c). The clear language of the statute, which provides that the "order remanding the case may require payment of just costs and any actual expenses including attorney fees, incurred as a result of the removal," makes such an award discretionary. The Supreme Court set forth the standard for awarding fees under § 1447(c) in *Martin v. Franklin Capital Corporation*, 546 U.S. 132, 126 S.Ct. 704 (2005):

> [T]he standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied. *See*, *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 541 (5th Cir. 2004); *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 293 (5th Cir. 2000). In applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case. For instance, a plaintiff's delay in seeking remand or failure to disclose facts necessary to determine jurisdiction may affect the decision to award attorney's fees. When a court exercises its discretion in this manner, however, its reasons for departing from the general rule should be "faithful to the purposes" of awarding fees under § 1447(c).

*Id.*, at 711.

15

The court must consider the propriety of the removing party's actions at the time of removal, based on an objective view of the legal and factual elements in each particular case, irrespective of the fact that it was ultimately determined that removal was improper. *Id.*; *Miranti v. Lee*, 3 F.3d 925, 928 (5th Cir. 1993); *Avitts v. Amoco Production Co.*, 111 F.3d 30, 32 (5th Cir.), *cert. denied*, 522 U.S. 977, 118 S.Ct. 435 (1997).

## Parties' Arguments and Analysis

### Diversity Jurisdiction under § 1332(a)

The issues that must be addressed with regard to whether the court has diversity jurisdiction are the citizenship of EisnerAmper's partners, and whether FRS and MERS are arms of the state. The record demonstrates that the court has subject matter jurisdiction in this case based on diversity.

### Citizenship of EisnerAmper Partners

In the Notice of Removal, EisnerAmper alleged that EisnerAmper Cayman is incorporated under the law of the Cayman Islands and has its principal place of business in the Cayman Islands.[8] Plaintiffs did not dispute this allegation. With regard to EisnerAmper LLP the Notice of Removal stated that it is a New York Limited liability partnership with its principal place of business in New York, that none of its partners reside in or are citizens of

---

[8] Record document number 1, Notice of Removal, ¶ 9.

16

Louisiana,[9] and that none of its partners are United States citizens domiciled abroad.  Plaintiffs argued that EisnerAmper has not met its burden of establishing diversity because the Notice of Removal simply includes an unsupported allegation that none of EisnerAmper LLP partners are domiciled abroad.[10]  Plaintiffs submitted a page from EisnerAmper's website, asserting that based on this information the companies have a substantial foreign practice,[11] and speculated that it is highly unlikely that some of their partners are not domiciled abroad.

EisnerAmper maintained that EisnerAmper LLP does not have any partners who are United States citizens living abroad.  EisnerAmper provided the affidavit of the managing director of finance of EisnerAmper LLP, Russell Ascher, who stated that the partnership has no partners who are U.S. citizens domiciled outside of the United States.[12]  Plaintiffs did not provide an affidavit, declaration, or other reliable information to contest Ascher's affidavit.  Therefore, the present record establishes that EisnerAmper LLP does not have any partners living abroad that would preclude the existence of diversity jurisdiction in this case.

---

[9] Plaintiffs did not contest the allegation that none of the partners have residence/citizenship in Louisiana.

[10] Record document number 1, Notice of Removal, ¶ 10.

[11] Record document number 10-6, Exhibit 4.

[12] Record document number 11-3, Exhibit B, Affidavit of Russell Ascher.

17

**Louisiana Funds Status as Arms of the State**

Plaintiffs did not argue that NOFPF, the New Orleans pension fund, is an arm of the state.  However, the plaintiffs maintained that the *Tradigrain* analysis should result in finding that FRS and MERS are arms of the state, and therefore are not citizens of any state for purposes of diversity jurisdiction.  EisnerAmper argued the contrary position.

The analysis of the *Tradigrain* factors that follows shows that EisnerAmper's arguments are persuasive and result in the conclusion that FRS and MERS are not arms of the state.  The first factor focuses on this question: Do the state's statutes and case law characterize or treat the entity as an arm of the state? Plaintiffs argued that the answer is yes, relying on a Louisiana Attorney General Opinion, and the Louisiana Supreme Court decision in *Louisiana Municipal Association v. State of Louisiana*, 893 So.2d 809 (La. 2005).  However, the arguments and authority relied on by the plaintiff are not persuasive.  As pointed out by EisnerAmper, the Attorney General Opinion does not specifically address the legal status of statewide retirement systems such as MERS and FRS[13] in the context of determining whether there is diversity jurisdiction.  Furthermore, the Attorney General's conclusion was based on a truncated analysis that considered only that the

---

[13] Both MERS and FRS are included in the definition of statewide retirement systems.  LA-R.S. 11:4(B)(1)(d) and (e).

18

legislature set up and implemented the statewide retirement systems and the powers and duties of the board of trustees.

The *Louisiana Municipal Association* case addressed 1991 legislative changes made to statewide retirement systems and whether those changes violated the Louisiana constitution. The decision did not result in any holding or statement that statewide retirement systems in general, or MERS and FRS specifically, are agencies or arms of the state. In fact, a closer review of the opinion and decision supports the conclusion that state law does not treat MERS and FRS as agencies or arms of the state.[14] They both point out that the statutes specifically define certain public employee retirement systems, such as the Louisiana State Employees Retirement System ("LASERS") and Louisiana School Employees' Retirement System ("LSERS"), as state agencies.[15] Whereas, neither MERS nor FRS, which are statewide systems, are not defined in the statutes as state agencies. The current law simply states that FRS and MERS have the powers and privileges of a corporation.[16] The legislature's choice to define some retirement systems as state agencies and not others implies that the ones that were not so defined, were not intended by the legislature to be considered

---

[14] EisnerAmper noted that the plaintiff did not cite any state statute, federal or state court decision that holds or defines MERS or FRS as a state agency or arm of the state.

[15] LSA-R.S. 11:402; LSA-R.S. 11:1001.

[16] LSA-R.S. 11:1731; LSA-R.S. 11:2251.

state agencies or arms of the state.

Two other factors plainly indicate that MERS and FRS are independent and separate from the state:  they have the right to hold and use property, and to sue and be sued in their corporate names.  Plaintiffs did not dispute this fact but argued that these rights are somewhat limited by state law.[17]  The statutes cited by the plaintiff do not support the conclusion that they are limitations on these rights.  However, even it they were the plaintiffs failed to explain how the alleged limitations tend to show that MERS and FRS are state agencies or arms of the state.[18]

The next question is:  Are these two plaintiff retirement systems concerned primarily with local or statewide problems and concerns?  Plaintiffs argued that because MERS and FRS provide and disburse benefits for municipal workers and firefighters located all over the state, they are concerned with statewide as opposed to local problems.  EisnerAmper argued that the opposite conclusion is warranted because  the systems were set up for the benefit of local entities and their employees, who elect to be a part of the system and contribute a majority of the funds.

The fact that the state has acted through its constitution and statutes to set up MERS and FRS indicates that a sound retirement

---

[17] Record document number 60-2, p. 36.

[18] EisnerAmper's arguments with regard to these two factors are persuasive.  Record document number 11, EisnerAmper's Opposition to Plaintiffs' Motion to Remand, pp. 10-11.

benefit systems for local government employees is a concern of the state.  However, MERS and FRS clearly operate to provide benefits for local municipalities and fire districts.  Since the origin and operation of MERS and FRS deal with concerns that are both state and local, this factor is essentially neutral.

Do MERS and FRS have management and financial autonomy from the state?  This is a key factor in the analysis.  Plaintiffs argued that the provisions of the state constitution and Title 11, entitled "Consolidated Public Retirement Systems," show that FRS and MERS lack autonomy from the state.[19]  For example, the plaintiff pointed out that: (1) La.Const. art. X, § 29(E) requires the actuarial soundness of the statewide systems be maintained and that the legislature establish the method of actuarial valuation for each system; (2) in Title 11 the legislature established the method of actuarial valuation and for amortization of unfunded accrued liabilities, the employee contribution rates, and a multi-level formula to determine the rates of employer contributions; (3) to monitor the statewide retirement systems and insure their actuarial soundness and payment of benefits, the legislature established the Public Retirement Systems' Actuarial Committee and the Funding Review Panel; (4) state laws require the investment managers and advisors of FRS and MERS to provide annual audits and investment

---

[19] Record document number 10-3, Memorandum in Support of Motion to Remand (same as Record document number 60-2 filed in CV 13-373-SDD-SCR), pp. 27-35.

performance data; (5) the systems are managed by a board of trustees and the boards include two members of the legislature, the state treasurer and commissioner of administration; and (6) FRS and MERS are subject to state open meetings and public record laws, and their trustees and board members are subject to state ethics law.  Plaintiffs also emphasized that MERS and FRS obtain part of their funding from a percentage of ad valorem taxes and a fund created from an assessment on insurers who do business in the state.[20]

Review of the arguments and statutes relied on by the plaintiffs shows that the legislature set up the structure of MERS and FRS to monitor and oversee them for the purpose of fulfilling the constitutional requirement that the funds not be impaired or diminished and remain sound to insure that accrued benefits are paid.[21]  However, in light of other undisputed facts, this does not demonstrate FRS and MERS lack management and financial autonomy from the state.

In 1991 the legislature repealed the law that transferred MERS and FRS into the state department of the treasury.[22]  The boards have a few state officials on them, but the vast majority of board

---

[20] *Louisiana Municipal Association,* 893 So.2d at 816-17, 821, 827.

[21] *Id.,* at 819-24.

[22] LSA-R.S. 36:769(D)(8) and (9).

members are local and not state officials.[23]   Plaintiffs did not
dispute that the boards manage and make the decisions on daily
operations and the retirement fund investments.[24]   Most important,
however, is the fiscal autonomy of MERS and FRS that was
established by the changes in the law enacted in 1991.   These
changes are discussed in great detail in the *Louisiana Municipal
Association* decision.

As explained in *Louisiana Municipal Association* and
acknowledged by the plaintiffs, in 1991 the law was amended so that
the state no longer guaranteed the payment of benefits to members
of FRS and MERS - the state is not responsible for their debts,
financial obligations or any annual shortfall in the return on
investments needed to pay benefits.   Instead, the state's current
obligation is to maintain the actuarial soundness of the funds by
using a variety of funding mechanisms such as direct contributions
from employers and employees, a percentage of ad valorem taxes, or
an assessment on insurers, and providing a formula for calculating

---

[23] LSA-R.S. 11:1821(B); LSA-R.S. 11:2260(A).

[24] The legislature gave the boards the authority to employ and
determine the compensation of actuaries, legal counsel  and other
persons that are needed for them to administer the funds.   The
legislation also gives them the power to purchase, hold, sell,
assign and dispose of the property in the funds of the retirement
systems.   See, LSA-R.S. 11:2260 and 11:2261; LSA-R.S. 11:1823 and
1841.

the employers' contribution.[25]  The law is now structured so that actuarial soundness is maintained by placing the risk of any shortfall in the investments on the participating employers, and not on the state and its treasury.[26]

This is in contrast to the four state retirement systems. With the state retirement systems the legislature itself sets the employer's contribution rate, because the state must directly pay from its general funds any annual shortage of money needed to pay benefits.[27]  The source and method of funding, and the fact that the state does not pay or guarantee the payment of the benefits in FRS and MERS, support the conclusion that they have financial independence from the state and its treasury such that they must be considered separate and distinct from the state, rather than an agency, alter ego or arm of the state.

In support of the position that FRS and MERS are entities independent from the state, EisnerAmper also relied on complaints

---

[25] The vast majority of the funds in FRS and MERS come from local sources.  Record document number 11, p. 15; record document number 11-1, declaration of Charlotte C. Meade; record document number 11-9, Exhibit H, deposition of Steven B. Stockstill.

[26] *Louisiana Municipal Association*, 893 So.2d at 821-29, 845-53.

[27] The fact that any shortfalls in the actuarial computation are the direct responsibility of the state itself is a defining feature of the four state guaranteed public retirement systems. *Id.*, at 823, 826, 849, 850-51.

filed in this court and in the Northern District of Illinois.[28] Although, EisnerAmper has not established that the doctrine of judicial estoppel should be applied,[29] review of these complaints shows that the plaintiffs jurisdictional allegations are inconsistent with the position they have taken in this case. Review of these complaints shows that in the Illinois case, FRS alleged that jurisdiction was based on diversity and the Class Action Fairness Act, stating that "FRS is of diverse citizenship from the Defendants."[30] In the 2009 case filed in this court, MERS alleged that it is "a public retirement system organized under the laws of the State of Louisiana, with its principal place of business in Baton Rouge, Louisiana." In addition to jurisdiction under federal securities law, the jurisdictional allegations by MERS also included a statement that the court had jurisdiction under the diversity statute.[31] In response, the plaintiffs did not address or explain these inconsistent jurisdictional allegations they previously made in actions filed in federal court.

_____

[28] Record document number 11, pp. 6-7; record document number 11-7, Complaint, CV 09-1008-RET-SCR; record document number 11-8, Class Action Complaint, CV 09-7203.

[29] The doctrine may be applied only where the position of the party to be estopped is clearly inconsistent with its previous one, and that party must have convinced the court to accept that previous position. *In re Coastal Plains, Inc.,* 179 F.3d 197, 205-06 (5th Cir. 1999).

[30] Record document number 11-8, Class Action Complaint, ¶ 13.

[31] Record document number 11-7, Complaint, ¶¶ 1 and 34.

25

In summary, virtually all of the T*radigrain* factors, particularly the ones related to management and finance, support a finding that FRS and MERS are not an alter ego or arm of the state. Plaintiffs FRS and MERS have previously filed complaints in federal court alleging diversity as a basis for jurisdiction. Therefore, the record establishes that FRS and MERS are separate and independent entities sufficiently distinct from the state, such that they should not be considered an arm of the state for purposes of diversity jurisdiction.   Their presence does not prevent the exercise of subject matter jurisdiction under § 1332(a).

### Subject Matter Jurisdiction under § 1334(b)

Plaintiffs maintained that the court does not have subject matter jurisdiction under § 1334(b) because EisnerAmper cannot demonstrate that this suit is sufficiently related to the bankruptcy cases pending in the Southern District of New York.[32] Plaintiffs argued their position is correct because, based on the well-pleaded complaint rule, it is apparent that they have not sued any of the bankruptcy debtors.[33]   Plaintiffs argued further that

---

[32] As explained in the Magistrate Judge's Report issued in CV 13-373-SDD-SCR, these cases are: (1) the Chapter 11 petition filed by Fletcher International Limited, Case Number 12-12796; (2) the Chapter 15 bankruptcy petition filed by the liquidator of Leveraged, Case Number 14-10093; and (3) the Chapter 15 bankruptcy petition filed by the liquidator of Arbitrage, Case Number 14-10094.

[33] Insofar as the plaintiffs relied on the well-pleaded
(continued...)

recovery against EisnerAmper in this suit will not diminish the
bankruptcy estate, and most importantly that the Confirmation Order
in the Fletcher International bankruptcy proceeding[34] gives them the
right to pursue their claims against EisnerAmper in state court.[35]

EisnerAmper asserted that in addition to diversity
jurisdiction, there is jurisdiction under § 1334(b) because the
circumstances of this case satisfy the broad standard of "any
conceivable effect" on the estate being administered in bankruptcy.
Eisneramper argued that the plaintiffs' state court petition seeks

---

[33](...continued)
complaint rule, the argument does not demonstrate this court lacks
jurisdiction under § 1334(b).   This rule does not govern in
deciding whether there is related to bankruptcy jurisdiction.   *In
re Brooks Mays Music Co., supra.*

[34] Record document number 10-5, Exhibit 3, pp. 1-54 (Findings
of Fact, Conclusions of Law and Order Confirming the Trustee's
Second Amended Plan of Liquidation Pursuant to Chapter 11 of the
Bankruptcy Code)(hereafter, "Confirmation Order"); Exhibit A, pp.
54-101 (Trustee's Second Amended Plan of Liquidation) (hereafter,
"Plan").   The Confirmation Order was signed and filed by the
bankruptcy judge on March 28, 2014.

[35] On the question of related to bankruptcy jurisdiction the
plaintiffs also relied on the arguments made in their briefs filed
in CV 13-373-SDD-SCR.   Plaintiffs attached the memoranda as
Exhibits 1 and 2.  Record document numbers 10-3 and 10-4.  However,
review of the memoranda shows that other than general arguments
about related to jurisdiction, the arguments do not support the
plaintiff's position in this case.   In CV 13-373-SDD-SCR the
plaintiffs sued a total of 23 defendants who were connected to
their investment in the Series N shares, and key defendants in the
case had filed proofs of claim in the bankruptcy proceeding and
were also connected to the debtor by virtue of alter ego
allegations in the petition as well as in the bankruptcy filings.
Consequently, the plaintiffs' arguments CV 13-373-SDD-SCR are in
large part not relevant or helpful in deciding the § 1334(b)
jurisdictional issue in this case.

recovery for the same losses they are attempting to recovery in the bankruptcy - the loss of their $100 million investment purchase of Series N Shares in Leveraged.[36] Given this fact, if the plaintiffs recover all or part of their losses in this action, it will necessarily impact the administration of and distributions available in the bankruptcy case.

With regard to the March 28, 2014 confirmation of the Plan in the Fletcher International bankruptcy case, EisnerAmper asserted that as long as there is related to jurisdiction at the time of removal the court is not divested of subject matter jurisdiction under § 1334(b) when the plan is confirmed.  In addition, because plaintiffs seek the same loss in both forums and are not entitled to double recovery, any losses compensated by EisnerAmper in this case would make more available for distribution to other creditors in the administration of the Plan.

These arguments are persuasive.  Essentially for the reasons explained by EisnerAmper, the record supports a finding that there is related to jurisdiction, because the plaintiffs' petition/claims in this case have a conceivable effect on the bankruptcy.[37]  The conceivable effect is obviously the result of the fact that the primary purpose of both this case and the bankruptcy is to recover

---

[36] Petition, ¶ 189.

[37] Record document number 11, EisnerAmper LLP and EisnerAmper (Cayman) Ltd.'s Opposition to Plaintiffs' Motion to Remand, pp. 18-24.

the plaintiffs' $100 million investment loss in the Leveraged Series N Shares.  Plaintiffs do not dispute this connection. This connection and relationship is not simply a tangential one based on the shared facts underlying this case and the bankruptcy proceedings.  If the outcome in this litigation is that the plaintiffs succeed in fully or partially recovering their $100 million investment loss from EisnerAmper, this recovery would reduce the amount of the plaintiffs' claims against the debtor and thereby potentially benefit other creditors.[38]  This conceivable effect is sufficient to establish related to jurisdiction under § 1334(b).[39]

Plaintiffs also argued that the Confirmation Order signed by the Fletcher International bankruptcy judge on March 28, 2014, the day after removal, provides further evidence that related to jurisdiction is lacking.[40]  Plaintiffs relied on the fact that

---

[38] As explained in CV 13-373-SDD-SCR, Robin Lee McMahon, one of the liquidators of the Leveraged and Arbitrage winding-up proceedings, concluded that plaintiff Louisiana pension funds were the largest stakeholders and most significant, aggrieved parties with respect to the debtor Fletcher International.  Civil Action Number 13-373-SDD-SCR, record document number 204, pp. 10-11.

[39] *See, In re Canion*, 196 F.3d at 586-87 (claim between two non-debtors that will potentially reduce the bankruptcy estate's liabilities produces an effect on the estate sufficient to confer related to jurisdiction).

[40] Record document number 10-5, Exhibit 3.  Plaintiffs settled the proofs of claim they filed in the bankruptcy case for $3 million.  Plan, Article VI, p. 14.

paragraphs 43 and 44 of the Confirmation Order and Section 10.6 of the Plan allow the plaintiffs to assert any and all claims and defenses they have against any person or entity, other than Fletcher International/Debtor, the Estate or Trustee, in any federal or state court. According to the plaintiffs, this shows that the bankruptcy court has given them specific authority to pursue their claims in state court, and is further evidence that this case is unrelated to the bankruptcy.

This argument is unsupported and not persuasive. If there is related to jurisdiction at the time of removal, provisions of the Confirmation Order and Plan which was entered after removal cannot divest the court of bankruptcy jurisdiction.[41] Therefore, even if the provisions of the Plan relied on by the plaintiffs are considered under the applicable law they would not support finding that the court does not have subject matter jurisdiction over this case under § 1334(b). Furthermore, post-confirmation, the claims brought by the plaintiffs in this case against EisnerAmper could continue to have an affect the administration of the Plan. The foundation of the Plan is an Investor Settlement in which Fletcher International/Debtor, Leveraged, Arbitrage and their Liquidators and Massachusets Bay Transportation Authority Retirement Fund agreed to pool their claims against third parties for breach of contract, fraud, breach of fiduciary duty, negligence and similar

---

[41] *In re Enron Corp. Securities*, 535 F.3d at 336.

torts.[42]   One of the parties included in the list of pooled claims
in Exhibit A to the Plan is EisnerAmper, along with any of its
parents, subsidiaries and affiliates.   These are essentially the
same claims the plaintiffs have alleged here in their petition
filed in state court against EisnerAmper on February 28, 2014.

It is uncontested that under the Plan the plaintiffs had the
right to bring their claims against EisnerAmper in state court.
But it does not follow that this litigation is now unrelated to the
bankruptcy proceedings.   If the plaintiffs prevail on some or all
of the claims they have brought against EisnerAmper, this could
affect decisions about what pooled claims the Plan Administrator
will pursue, which will in turn affect the amount of fees and
expenses incurred in carrying out the Plan, and the amount to be
distributed under the Plan.[43]

In summary, the defendants have demonstrated that the outcome
of this proceeding could conceivably have an effect the liabilities
of the debtor and the administration of the bankruptcy estate.
Under *In re Enron*, at the time of removal this court had
jurisdiction under § 1334(b), therefore, the subsequent

---

[42]   The Findings of Fact, Conclusions of Law and Order
Confirming the Trustee's Second Amended Plan of Liquidation states
that the Investor Settlement pooled claim provisions present the
best prospect for recovery in the bankruptcy case.   Record document
number 10-5, Exhibit 3, Confirmation Order, ¶ 33.

[43]   See, for example, record document number 10-5, Exhibit 3,
Confirmation Order, ¶¶ 32-35, 53, 99, 103, 109.

Confirmation Order and Plan did not deprive the court of subject matter jurisdiction.   Therefore, the defendants have met their burden of establishing that subject matter jurisdiction exists based on 28 U.S.C. § 1334(b).

**Mandatory Abstention**

The court must now turn to address whether mandatory or permissive abstention is appropriate in the circumstances of this case. A party seeking mandatory abstention under § 1334(c)(2) bears the burden of establishing the following: (1) the claim has no independent basis for federal jurisdiction other than § 1334(b); (2) the claim is a non-core proceeding, i.e., it is related to a case under title 11, but does not arise under or in a case under title 11; (3) an action has been commenced in state court; and, (4) the action could be adjudicated timely in state court. *In re TXNB Internal Case*, *supra*; *In re Doctors Hosp. 1997, L.P.*, 351 B.R. 813, 846-847 (S.D.Tex. 2006).

The analysis above demonstrates that this case has an independent basis for federal jurisdiction - diversity. Because this action could have been commenced in federal court on the basis of diversity jurisdiction, mandatory abstention under § 1334(c)(2) is not appropriate. *Id.*; *Briese v. Conoco-Phillips Co.*, 2009 WL 256591 (W.D.La. Feb. 3, 2009).   Mandatory abstention applies only when there is no basis for federal jurisdiction other than § 1334. *In re Brooks Mays Music Co., supra.*   Plaintiffs' inability to

32

establish this first requirement for mandatory abstention under §
1334(c)(2), makes it unnecessary to address the other three
factors.

**Permissive Abstention**

The final issue is whether the court should exercise its
discretion to abstain and remand under § 1334(c)(1) and § 1452(b).
In its substituted opinion in *Firefighters' Retirement System v.
Citco Group Ltd.* on August 6, 2015, the appellate court held that
"the district court cannot permissively abstain from exercising
jurisdiction in a proceeding related to Chapter 15 cases." Under
28 U.S.C. § 1334(c)(1) the district court is prohibited from
permissively abstaining and equitably remanding such an action to
state court.

Based on the reasons explained in the section of this report
addressing the existence of related to Chapter 11 bankruptcy
jurisdiction, the Fifth Circuit's decision in *Firefighters'
Retirement System v. Citco Group Ltd.*,[44] and the provisions of the
Confirmation Order and Plan in the Chapter 11 case, it is apparent
that this case is related to the Chapter 15 bankruptcy proceedings
of the Leveraged Fund and the Arbitrage Fund. Therefore, the
decision in *Firefighters' Retirement System v. Citco Group Ltd.* is
binding and controls the resolution of the permissive abstention

---

[44] 2015 WL 4666010 *5, n 7.

33

issue in this case.  The court has no discretion to abstain and equitably remand this action to state court.

**Costs and Expenses under 28 U.S.C. § 1447**

Plaintiffs moved for an award of attorney's fees and costs under 28 U.S.C. § 1447(c).  Plaintiffs have not established that the court lacks subject matter jurisdiction based on the diversity statute, or § 1334(b).  Therefore, there is no basis under § 1447(c) to award the plaintiffs any fees or expenses incurred as a result of the removal.

<u>**RECOMMENDATION**</u>

It is the recommendation of the magistrate judge that the Motion to Remand filed by the plaintiffs be denied.

Baton Rouge, Louisiana, August 18, 2015.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE