UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

FIREFIGHTERS' RETIREMENT
SYSTEM, ET AL.

                                                    CIVIL ACTION

VERSUS

                                                    NO. 14-103-SDD-EWD

GRANT THORNTON LLP, ET AL.

**NOTICE**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on February 21, 2017.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

1

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

FIREFIGHTERS' RETIREMENT
SYSTEM, ET AL.

                                                             CIVIL ACTION

VERSUS

                                                          NO. 14-103-SDD-EWD

GRANT THORNTON LLP, ET AL.

## REPORT AND RECOMMENDATION

Before the court is a Motion to Dismiss Plaintiffs' Petition (the "Motion to Dismiss")[1] filed by Grant Thornton LLP ("Grant Thornton USA").  The Motion is opposed,[2] and Grant Thornton USA has filed a reply.[3]  The Motion to Dismiss was referred to the undersigned for a report and recommendation.[4]  For the reasons set forth herein, it the recommendation of the undersigned that the Motion to Dismiss be **GRANTED**.

## I.  BACKGROUND

This case arises out of the same facts and circumstances presented in *Firefighters' Retirement System, et al. v. Citco Group Limited, et al.*, No. 13-373-SDD-EWD (the "Original Action").  Plaintiffs filed the Original Action on March 1, 2013.[5]  In the Original Action, Plaintiffs filed suit in Louisiana state court against 23 defendants, including Grant Thornton International, Ltd. ("Grant Thornton International") asserting claims under the Louisiana Securities Act and

---

[1] R. Doc. 24.

[2] R. Doc. 53.

[3] R. Doc. 54.  Grant Thornton USA also filed a Supplemental Memorandum of Law in Further Support of its Motion to Dismiss.  R. Doc. 51.  Additionally, on January 30, 2017, the undersigned ordered the parties to submit supplemental memoranda addressing, *inter alia*, whether Plaintiffs were required to submit the claims asserted in this matter to a public accountant review panel and whether Plaintiffs did submit the claims asserted in this matter to a public accountant review panel.  R. Doc. 96.  The parties filed their supplemental memoranda responsive to the undersigned's January 30, 2017 Notice and Order on February 13, 2017.  R. Docs. 97 & 98.

[4] R. Doc. 76.

[5] Original Action, R. Docs. 1-3.

Louisiana Unfair Trade Practices Act, as well as third party beneficiary, unjust enrichment, breach of contract, negligent misrepresentation, and general tort claims.[6]  The Original Action was removed pursuant to 28 U.S.C. § 1452(a), and jurisdiction is maintained in this Court pursuant to 28 U.S.C. § 1334(b).[7]

Plaintiffs' claims arise from a $100 million investment loss.  In April of 2008, the Louisiana Funds purchased 100,000 Series N Shares offered and issued by FIA Leveraged Fund ("Leveraged") for $100 million.[8]  After a series of investment transactions initiated by Leveraged, in March of 2011, Plaintiffs sought to redeem their Series N shares.[9]  Ultimately, the shares went unredeemed and the Plaintiffs determined that the investment was illiquid and, thus, the N shares, for which there was no market, were valueless.[10]

---

[6] Original Action, R. Doc. 1-3.  Plaintiffs' Petition for Damages was filed on March 1, 2008.  Therein, Plaintiffs named the following defendants: (1) Citco Group Limited; (2) Citco Fund Services (Cayman Islands), Limited; (3) Citco Fund Services (Suisse) S.A.; (4) Citco Banking Corporation, N.V.; (5) Citco N.V.; (6) Citco Fund Services (Europe) BV; (7) Citco (Canada), Inc.; (8) Citco Technology Management, Inc.; (9) Citco USA; (10) Citco Bank Nederland, N.V., Dublin Branch; (11) Citco Global Custody N.V.; (12) Citco Fund Services (Bermuda) Limited (collectively, the "Citco Defendants"); (13) Fletcher Asset Management, Inc.; (14) Alphonse "Buddy" Fletcher, Jr.; (15) Denis Kiely; (16) Duhallow Financial Services, LLC; (17) Lisa Alexander; (18) Peter M. Zayfert (collectively, the "Fletcher Defendants"); (19) Consulting Services Group, LLC ("CSG"); (20) Joe Meals (collectively, the "Investment Advisor Defendants"); (21) Grant Thornton International, Ltd.; and (22) Non-Series N Shareholders.  Original Action, R. Doc. 1-3.  On May 8, 2013, Plaintiffs filed a Second Amendment to the Petition for Damages adding the law firm of Skadden, Arps, Slate, Meagher & Flom, LLP as a defendant.  Original Action, R. Doc. 1-3.

[7] "[D]istrict courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  In the Original Action, the Fifth Circuit has noted that "removal was proper based on the Chapter 11 proceedings, such that the district court had subject matter jurisdiction at the time of removal."  Original Action, R. Doc. 222.  In the Original Action, defendants have explained that Arbitrage was an intermediate-level fund in the master/feeder structure of the Fletcher-run funds.  Original Action, R. Doc. 113.  Assets of Arbitrage were invested in another intermediate-level fund, Fletcher International, Inc. ("International") which in turn invested its assets in the ultimate master fund, Fletcher International Ltd.  Original Action, R. Doc. 113.  On June 29, 2012, Fletcher International Ltd. filed a voluntary petition under 11 U.S.C. §§ 101 et seq. in the Bankruptcy Court for the Southern District of New York.

[8] R. Doc. 1-2, ¶ 7.  *See also*, Original Action, R. Doc. 1-3, ¶ 34.  Plaintiffs' petition in this action refers to their March 31, 2008 investment.  *See*, R. Doc. 1-2, ¶ 23.  In the Original Action, Plaintiffs alleged they purchased Series N shares "in April of 2008."  Original Action, R. Doc. 1-3, ¶ 37.

[9] Original Action, R. Doc. 1-3, ¶ 41.

[10] *See*, Original Action, R. Doc. 1-3, ¶¶ 34-45 & 18.

On January 17, 2014, Plaintiffs filed the instant suit against Grant Thornton USA and Consulting Services Group, LLC ("CSG").[11]   The suit was removed to this court on February 18, 2014, and, like the Original Action, jurisdiction is maintained pursuant to 28 U.S.C. § 1334(b).[12] Plaintiffs allege that Grant Thornton USA

> is the US member of Grant Thornton International Ltd.  Grant Thornton USA is the sixth (6th) largest accounting firm in the United States, with over 55 offices, 6,000 employees, 500 partners, and $1.212 billion in revenue for the 2012 fiscal year.  Grant Thornton USA performed most of the audit procedures and other work related to, and resulting in, the audit opinions issued by Grant Thornton International and Grant Thornton USA to Leveraged and Arbitrage.   Further, the Offering Documents identified Grant Thornton USA as the auditor of Leveraged, using the address of the GT-USA office at 60 Broad Street, New York, New York, which according to the Grant Thornton USA website, is the actual address of Grant Thornton USA's "New York office."  Grant Thornton USA is being named as a defendant herein as agent for Grant Thornton International and Grant Thornton Cayman.  It is also named as a defendant herein as the principal of its agent, Grant Thornton Cayman, who it specifically directed in connection with the audits that are the subject of this litigation.  Regardless of whose name appears on the audit, Grant Thornton USA performed substantially all of the audit services.[13]

Plaintiffs allege that Grant Thornton USA was retained to audit "the financial statements of Leveraged, Arbitrage, and other funds formed and operated by FAM during the periods in

---

[11] R. Doc. 1-2.  Plaintiffs explain in the petition that "[b]ecause of certain prescription issues that may arise, Plaintiffs are required to file this lawsuit in order to interrupt prescription even though it is likely that Grant Thornton, USA and Grant Thornton International are solidary obligors and prescription has been interrupted.  Due to the amount of money at stake, this case is being filed to eliminate any doubt concerning this issue." R. Doc. 1-2, ¶ 3. Unlike Grant Thornton USA, Plaintiffs named CSG as a defendant in the Original Action.  Plaintiffs do not explain in their petition why they named CSG as a defendant in this case when it was already named as a defendant in the Original Action.  During a December 14, 2016 conference, counsel for Plaintiffs agreed to file a motion to consolidate Plaintiffs' claims against CSG into the Original Action by January 20, 2017.  *See*, R. Doc. 93.  Plaintiffs have an Unopposed Motion to Consolidate Claims Against Consulting Services Group, LLC pending in the Original Action.  Original Action, R. Doc. 364.

[12] *See*, R. Docs. 32 & 34.

[13] R. Doc. 1-2, ¶ 1(A).

question."[14]  Plaintiffs allege Grant Thornton USA and Grant Thornton International[15] prepared the audits of Leveraged and Arbitrage for the years ending December 31, 2007 and December 31, 2008 (the "Initial Audits") and that because of an error in the Initial Audits, Grant Thornton USA issued restated financial statements for Leveraged and Arbitrage for the years ending December 31, 2007 and December 31, 2008 on January 20, 2011 (the "Restated Audits").[16]  Plaintiffs further allege that Grant Thornton USA "performed most of the work" in connection with the Initial and Restated Audits[17] and that, despite Grant Thornton International's arguments in the Original Action, Grant Thornton USA "never [made] any attempt to explain to Plaintiffs that the auditors had changed from Grant Thornton USA and that the firm performing the work was a local Grand Cayman CPA firm."[18]

---

[14] R. Doc. 1-2, ¶ 11.  *See also*, R. Doc. 1-2, ¶ 20 ("the Offering Memorandum stated that GT-USA, with an address of 60 Broad Street, New York, NY 10004, was acting as the auditor and accountant for Leveraged, stating the following: The Fund has engaged the firm Grant Thornton LLP to serve as the Fund's independent auditor.").  Leveraged was a feeder fund which Plaintiffs allege was formed primarily to invest in Fletcher Income Arbitrage, Ltd. ("Arbitrage"). R. Doc. 1-2, ¶ 5.  Plaintiffs allege that Leveraged and Arbitrage were managed by Fletcher Asset Management, Inc. ("FAM").  R. Doc. 1-2, ¶ 8.

[15] As noted above, Grant Thornton International was named as a defendant in the Original Action.  On September 15, 2016, this court granted Grant Thornton International's Motion to Dismiss for Lack of Personal Jurisdiction.  Original Action, R. Doc. 323.  On October 13, 2016, Plaintiffs filed a Notice of Appeal of that decision.  Original Action, R. Doc. 334.  The District Court did not reach Grant Thornton International's arguments under Fed. R. Civ. P. 12(b)(6) and instead dismissed Grant Thornton International's Motion to Dismiss for Failure to State a Claim for Relief as moot.  Original Action, R. Doc. 323.

[16] R. Doc. 1-2, ¶¶ 20-22.  Plaintiffs allege that the Restated Audits were issued on January 20, 2011.  R. Doc. 1-2, ¶ 22.  However, Plaintiffs also allege that "[o]n or about March 20, 2011, Grant Thornton USA issued restated financial statements for Arbitrage and Leveraged for the years ending December 31, 2007 and December 31, 2008 ('Restated Audits')."  R. Doc. 1-2, ¶ 30.  Copies of the Restated Audits attached to previous briefing in the Original Action indicate that the Restated Audits are dated January 20, 2011.  Original Action, R. Doc. 59-7 & 59-9.

[17] R. Doc. 1-2, ¶ 20.

[18] R. Doc. 1-2, ¶ 20.  The Initial and Restated Audits are signed "Grant Thornton, Grand Cayman" and provide a Grand Cayman address in the letter head.  Original Action, R. Docs. 59-6, 59-7, 59-8, & 59-9.  In Grant Thornton International's Motion to Dismiss filed in the Original Action, this court focused on the relationship between Grant Thornton International and Grant Thornton-Cayman.  In briefing filed in conjunction with that Motion to Dismiss, Grant Thornton International argued that "[i]t is also beyond dispute that the member firm that performed and signed the audit reports at issue here is a legally distinct entity in the Cayman Islands that licenses the brand name 'Grant Thornton' from [Grant Thornton International]."  Original Action, R. Doc. 112, p. 2.  *See also*, Original Action, R. Doc. 112-1 (Supplemental Declaration of Esther Teeken-Van Der Zee in Opposition to Plaintiffs' Motion for Jurisdictional Discovery), ¶ 7 ("[Grant Thornton International] does not own, in part or in whole, any interest in the Cayman Islands member firm ('GT-Cayman') the performed the audit work at issue in this case.").

Plaintiffs allege that Grant Thornton, USA failed to detect and report certain information in: (1) the Initial Audits of Leveraged and Arbitrage for the years ending December 31, 2007 and December 31, 2008;[19] and (2) in the Restated Audits of Leveraged and Arbitrage which were issued on January 20, 2011.    Although Plaintiffs allege that some of the mistakes and misrepresentations contained in the Initial Audits were revealed in the Restated Audits,[20] Plaintiffs also allege that Grant Thornton USA failed to properly value what Plaintiffs refer to as the "IAP/EIC Note" in the Restated Audits[21] and that "[t]he improper valuation of the IAP/EIC Note, and the failure to disclose the consequences of a proper valuation at the time of the Restated Audits gives rise to claims against Grant Thornton USA."[22]    Plaintiff assert that the misleading

---

[19] With respect to the Initial Audits, Plaintiffs allege that the audits failed to reflect that: (1) before Plaintiffs' investment, there was only $1.6 million of cash "in the entire Fletcher System and Leveraged and Arbitrage were already invested in illiquid investments" such that if Plaintiffs' investment was not timely completed, "Grant Thornton USA would be required to issue a lack of going concern opinion on Leveraged, Arbitrage, and the Fletcher related entities;" (2) $42 million of the proceeds from the Initial Offering would not be invested in qualified investments, but would instead be used to pay obligations to Citco and fund a loan (the "Citco Payments"); (3) Leveraged had issued $80,000,000 in "Cashless Notes" to Arbitrage which resulted in an $80,000,000 overstatement of the net worth in Arbitrage and Leveraged; (4) an $80,000,000 debt was owed by Leveraged to other Fletcher funds which would rank senior to Plaintiffs' redemption rights "in contradiction to the terms of the Offering Documents;" and (5) significant conflicts of interest existed between Citco, Fletcher and his affiliates (the "Citco Conflict of Interest").  R. Doc. 1-2, ¶ 23.

[20] Plaintiffs allege that in the January 20, 2011 Restated Audits, Grant Thornton USA "corrected an error in the financial statement in which it overstated the net worth of Arbitrage by $80,000,000" and that "for the first time, the footnotes of the audit showed that the net worth of Leveraged had been misstated because Leveraged owed Arbitrage $80,000,000."  R. Doc. 1-2, ¶¶ 31 & 32.  *See also*, R. Doc. 1-2, ¶ 70 ("Grant Thornton admitted its error when it issued in January 2011 'restated' audit opinions of Leveraged and Arbitrage for the years ending December 31, 2007 and December 31, 2008.  Such restated opinions noted that the [Cashless Notes] effectively reduced the capital of Arbitrage and, correspondingly, the value of the Leveraged investment, and further noted the significant amount of redemptions occurring at Arbitrage at the same time period, all items not disclosed in any manner to Plaintiffs.  Because the Arbitrage capital consisted mostly of the Plaintiffs' investment via Leveraged, this effectively wiped out the Plaintiffs' investment."), ¶ 83 ("On January 20, 2011, Grant Thornton USA finally admitted that the Initial Audits were not accurate based upon the issuance of the Restated Audits almost one year after it had resigned as auditor.").

[21] *See*, R. Doc. 1-2, ¶¶ 34-51.  Specifically, Plaintiffs allege that $27 million of their funds was used in conjunction with Leveraged receiving "an unsecured promissory note from Income Arbitrage Partners, L.P ('IAP')…that was later exchanged for a promissory note from Equity Income Corporation ('EIC')….That promissory note [the 'IAP/EIC Note'] was unsecured, had no covenants, and for a period of time did not have a set interest rate."  R. Doc. 1-2, ¶ 41.  Plaintiffs assert that following Grant Thornton USA's resignation, EisnerAmper valued the IAP/EIC Note at $10,000,000, a value which would have triggered Plaintiffs' automatic redemption rights.  R. Doc. 1-2, ¶¶ 46 & 47.

[22] R. Doc. 1-2, ¶ 50.  Additionally, Plaintiffs specifically allege that the Restated Audits failed to reflect: (1) the Citco Payments; (2) "[t]he reasons Grant Thornton was resigning as auditor; (3) the Citco Conflict of Interest; (4) "[t]he real value of the IAP/EIC and Cashless Notes;" (5) "[t]he facts and circumstances concerning the solvency of Leveraged

information contained in the Initial and Restated Audits prevented them from exercising their redemption rights.[23]   Plaintiffs assert that Grant Thornton USA breached its obligations and duties to Plaintiffs and assert claims under Louisiana Securities Law (Count 1), holder claims (Court 2), negligence and negligent misrepresentation (Counts 3 and 5), third party beneficiary (Count 4), and Unfair Trade Practices (Count 8).

## II.     LAW AND ANALYSIS

### A.  Personal Jurisdiction

Fed. R. Civ. P. 12(b)(2) authorizes dismissal of a complaint where the court lacks personal jurisdiction.  "Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists." *Luv N' Care, Ltd. v. Insta-Mix, Inc.,* 438 F.3d 465, 469 (5th Cir. 2006) (citing *Wyatt v. Laplan*, 686 F.2d 276, 280 (5th Cir. 1982)).  When, as in this case, a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the plaintiff need only make a *prima facie* showing of personal jurisdiction.  *Johnston v. Multidata Systems Intern. Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting *Buillion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990) (citations omitted)). "Moreover, on a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists." *Id*. ("Proof by preponderance of the evidence is not required.").  However, in assessing whether the plaintiff has presented a *prima facie* case of

---

and Arbitrage that would have afforded Plaintiffs to exercise their Right of Redemption; (6) redemptions of non-Series N shares prior to the date of the Restated Audit; and (7) use of the proceeds of the Series N Offering to redeem Arbitrage shareholders prior to the date of the Restated Audit.  R. Doc. 1-2, ¶ 24.  Based on the allegations in Plaintiffs' Petition, Plaintiffs allege that Grant Thornton USA failed to reflect the Citco Payments and the Citco Conflict of Interest in both the Initial and Restated Audits.

[23] R. Doc. 1-2, ¶¶ 28-34.

personal jurisdiction, the court "will not 'credit conclusory allegations, even if uncontroverted.'" *Sealed Appellant 1 v. Sealed Appellee 1*, 625 Fed. Appx. 628, 631 (5th Cir. 2015) (quoting *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001)).  The court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery."  *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985)).

As noted above, this court has "related to" bankruptcy subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1334(b).  "Because the Court has 'related to' bankruptcy jurisdiction pursuant to § 1334(b), the entire body of the Federal Rules of Bankruptcy Procedure…applies to this action."  *Lentz v. Trinchard*, 730 F.Supp.2d 567, 577 n. 33 (E.D. La. 2010) (citing *In re Celotex Corp.*, 124 F.3d 619, 629 (4th Cir. 1997) ("We have determined that this case is properly in federal district court on 'related to' jurisdiction under § 1334(b).  The entire body of Bankruptcy Rules, therefore, applies to this action."); *Phar-Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1228, 1236-38 (3rd Cir. 1994) (analyzing history and current language of bankruptcy rules and finding that "the Bankruptcy Rules govern non-core, "related to" proceedings before a district court…."); *Diamond Mortg. Corp. of Illinois v. Sugar*, 913 F.2d 1233, 1243-44 (7th Cir. 1990) (same)).  Therefore, Bankruptcy Rule 7004(d), which provides for nationwide service of process in adversary proceedings arising under Title 11 of the United States Code, also applies.[24]

---

[24] Bankruptcy Rule 7004(d) provides for nationwide service of process.  ("The summons and complaint and all other process except a subpoena may be served anywhere in the United States.").  In turn, Bankruptcy Rule 7004(f) provides:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service in accordance with this rule or the subdivisions of Rule 4 F.R.Civ.P. made applicable by these rules is effective **to establish personal jurisdiction over the person of any defendant with respect to a case** under the Code or a civil proceeding arising under the Code, or arising in or **related to a case under the Code**.  (emphasis added).

Although the Fifth Circuit has not directly analyzed nationwide service of process and personal jurisdiction under Bankruptcy Rule 7004, it has upheld the exercise of personal jurisdiction in the context of nationwide service of process under other federal statutes.  In *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255 (5th Cir. 1994), the court considered personal jurisdiction based on nationwide service of process provisions in the 1934 Securities Exchange Act, 15 U.S.C. § 78aa.  There, plaintiff alleged that defendant, a dissolved New York law firm ("Buchman"), misrepresented information and failed to disclose material information included in a tax opinion and confidential offering memorandum drafted by the firm.  Buchman filed a motion to dismiss, arguing that it did not have minimum contacts with Texas and therefore the court could not exercise personal jurisdiction.  The *Busch* court disagreed, explaining that 15 U.S.C. § 78aa "gives the district court the authority to serve defendants nationwide" and that "'due process requires only that a defendant in a federal suit have minimum contacts with the United States.'"  *Id*. at 1257.  The Fifth Circuit stated that "while the Due Process Clause must be satisfied if a forum is to acquire personal jurisdiction over a defendant, sovereignty defines the scope of the due process test."  *Id*. at 1258.  "[W]hen a federal court is attempting to exercise personal jurisdiction over a defendant in a suit based upon a federal statute providing for nationwide service of process, the relevant inquiry is whether the defendant has had minimum contacts with the United States."  *Id*.  The court concluded that because the relevant sovereign was the United States, "it does not offend traditional notions of fair play and substantial justice to exercise personal jurisdiction over a defendant residing within the United States."  *Id*.  Accordingly, under *Busch*, where the relevant sovereign is the United States, the "forum" with which the defendant must have minimum contacts to satisfy due process is expanded to be the United States (rather than a particular state).

9

In *Bellaire General Hospital v. BlueCross BlueShield of Michigan*, 97 F.3d 822 (5th Cir. 1996), the Fifth Circuit had occasion to revisit its "national contacts" analysis of *Busch*. There, the court considered 29 U.S.C. § 1132(e)(2), the ERISA provision which provides for nationwide service of process.   Defendant, a corporation operating exclusively within the state of Michigan, argued that it did not have sufficient contacts with the state of Texas to be subject to personal jurisdiction in the Southern District of Texas.   The Fifth Circuit found that the district court properly exercised personal jurisdiction over defendant in Texas, explaining that it "placed no limitation on our conclusion in *Busch* regarding personal jurisdiction in cases involving federal statutes providing for nationwide service of process" and therefore the case before it fell "squarely within our *Busch* holding."  *Id*. at 825 & 26.  While the *Bellaire* court "dutifully appl[ied] *Busch*,"[25] it expressed "misgivings," stating "[w]e view personal jurisdiction and service of process as conceptually distinct issues.  We fail to apprehend how personal jurisdiction can be separated from due process by Congressional enactment of nationwide service of process provisions."  *Id*. at 826.

Notwithstanding the philosophical questions recognized by the Fifth Circuit, *Busch* and *Bellaire* remain binding authority on this court.   Under the law of this Circuit, the personal jurisdiction inquiry is collapsed into a question of a defendant's contacts with the United States. Thus far, the Fifth Circuit does not require any additional "fairness or reasonableness" test as a matter of constitutional due process.[26]   The question thus presented is whether movant has purposeful and meaningful contacts with the United States.

---

[25] The *Bellaire* court noted *Campbell v. Sonat Offshore Drilling, Inc.*, 979 F.2d 1115, 1121, n. 8 (5th Cir. 1992) ("It has been long established that a legally indistinguishable decision of this court must be followed by other panels of this court and district courts unless overruled en banc or by the United States Supreme Court.").  97 F.3d 826 n. 3.

[26] Other Circuits undertake additional Fifth Amendment due process analysis to determine if the exercise of personal jurisdiction would be "fair and reasonable." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935 (11th Cir. 1997).  The Eleventh Circuit has concluded that "the Due Process Clause of the Fifth Amendment provides an independent constitutional limitation of the court's exercise of personal jurisdiction over a domestic defendant served pursuant to a federal statute's nationwide service of process provision."  *Id*. at 939.  According to the Eleventh Circuit, "'minimum contacts' with the United States do not…automatically satisfy the due process requirements of

It is undisputed that Grant Thornton USA has contacts with the United States.  In their Petition, Plaintiffs allege that Grant Thornton USA is "an Illinois limited liability partnership with a principal place of business at 175 W. Jackson Blvd., 20th Floor, Chicago, Illinois 60604" and "is the US member of Grant Thornton International Ltd."[27]  In its Notice of Consent to Removal, Grant Thornton USA "confirm[ed] that it is an Illinois limited liability partnership" and asserted that it had no "stateless" partners.[28]  As a result, the undersigned finds that this court has personal jurisdiction over Grant Thornton, USA and recommends that Grant Thornton USA's Motion to Dismiss for lack of personal jurisdiction be DENIED.

the Fifth Amendment." *Id.* at 947.  As the court explained, "[t]here are circumstances, although rare, in which a defendant may have sufficient contacts with the United States as a whole but still will be unduly burdened by the assertion of jurisdiction in a faraway and inconvenient forum." *Id.*

[27] R. Doc. 1-2, ¶ 2(A).  Grant Thornton USA was served pursuant to Louisiana's Long Arm Statute, via Federal Express.  R. Doc. 11.  Grant Thornton USA contends that although "Plaintiffs served process consistent with the state long-arm statute," such process was improper under Bankruptcy Rule 7004, which Grant Thornton USA contends "does not permit service by Federal Express."  R. Doc. 97, p. 3.  The undersigned agrees that because nationwide service of process can be used to establish personal jurisdiction here, reference to the Louisiana long-arm statute is not required.  *See*, *SPV OSUS Ltd. v. AIA LLC*, 2016 WL 3039192, at * 3 n. 3 (S.D.N.Y. May 24, 2016) ("in accordance with Rule 7004(f) of the Federal Rules of Bankruptcy Procedure, this Court has personal jurisdiction over each of the Access Defendants to the extent allowed under the Constitution of the United States, and reference to New York's long-arm statute is not required.").  However, the undersigned does not agree that because an analysis of the Louisiana long-arm statute is not required when determining whether Grant Thornton USA has sufficient contacts with the relevant forum (*i.e.*, the United States), that service pursuant to the long-arm statute is insufficient.  Grant Thornton USA has cited no case so holding.  Bankruptcy Rule 7004 allows for service by first class mail or pursuant to Fed. R. Civ. P. 4(e)-(j).  Pursuant to Fed. R. Civ. P. 4(h)(1)(A), an association may be served "in the manner prescribed by Rule 4(e)(1) for service on an individual." Fed. R. Civ. P. 4(e)(1) provides that service may be made by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located…."  Accordingly, because Grant Thornton USA was served consistent with the state long-arm statute, such service complied with Fed. R. Civ. P. 4(h)(1)(A) and 4(e)(1).  *See also*, *Lentz v. Trinchard*, 730 F.Supp.2d 567, 577 n. 34 (E.D. La. 2010) ("According to Bankruptcy Rule 7004(f), serving a summons in accordance with the other subsections of Bankruptcy Rule 7004 is sufficient to establish personal jurisdiction over a defendant in an adversary proceeding if personal jurisdiction is 'consistent with the Constitution and laws of the United States.'  Bankruptcy Rule 7004(a)(1) states that service may be made pursuant to Rule 4(h) of the Federal Rules of Civil Procedure, which provides for service of process on a domestic corporation.") (citing Fed. R. Bankr. P. 7004(f) & 7004(a)(1); Fed. R. Civ. P. 4(h)).

[28] R. Doc. 15.  At the time of the filing of its Notice of Consent (March 13, 2014), Grant Thornton USA asserted that it had four partners working outside of the United States on temporary assignments, but that "[n]one of those partners is domiciled outside the United States…."  R. Doc. 15.  In opposition to Plaintiffs' previous Motion to Remand, Grant Thornton USA provided declarations under oath pursuant to 28 U.S.C. § 1764 from the partners, in which each partner confirmed his United States citizenship and residence in a state other than Louisiana (New York, Texas, Missouri, and Illinois).  R. Doc. 28-1, Exhibit 1.  Based on the affidavits, it appears that all but one of these secondment agreements has since ended.

### B.  Venue

The general venue statute, 28 U.S.C. § 1391, applies to actions "brought in district courts of the United States."  28 U.S.C. § 1391(a)(1).  That statute "has no application" to removed actions.  *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665 (1953).  *See also*, *Collin County v. Siemens Business Services, Inc.*, 250 Fed. Appx. 45, 51 (5th Cir. 2007) ("However, '[s]ection 1441(a), and not the ordinary federal venue statute, 28 U.S.C. § 1391, governs venue in removed cases.'") (quoting *Global Satellite Commc'n Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1271 (11th Cir. 2004)); *Ron Williams Construction, Inc. v. Lide Industries, LLC*, 2011 WL 6817889, at * 1 (W.D. La. Dec. 27, 2011) (same); 14C Fed. Prac. & Proc. Juris. § 3732 (4th ed.) ("The general removal statute, Section 1441 of Title 28, provides that the venue of a removed case is 'the district and division embracing the place where such action is pending.'  Accordingly, the general venue statutes, Section 1391 through Section 1393, do not apply to cases that have been initiated in a state court and removed to a federal court.  It therefore is immaterial that the federal court to which the action is removed would not have been a proper venue if the action originally had been brought there.").

As explained by the Supreme Court, "[t]he venue of removed actions is governed by [28 U.S.C. § 1441(a)].  That section expressly provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. §1441(a).  Defendant CSG removed this suit from the 19th Judicial District Court, Parish of East Baton Rouge, Louisiana.[29]  Because East Baton Rouge Parish is located within the Middle District of Louisiana, this court is a proper

---

[29] R. Doc. 1.

venue for this action.  *See*, *Ron Williams Construction, Inc. v. Lide Industries, LLC*, 2011 WL 6817889, at * 1 (W.D. La. Dec. 27, 2011) ("venue for removed actions is governed by 28 U.S.C. § 1441(a), which provides that venue is proper in the district in which the state court action was pending prior to removal.  [Defendant] removed this action from the 14th Judicial District Court for Calcasieu Parish, Louisiana.  Because Calcasieu Parish is located within the Western District of Louisiana, this court is a proper venue for this action.").  Accordingly, the undersigned recommends that Grant Thornton USA's Motion to Dismiss for improper venue be DENIED.

### C.  Timeliness of Plaintiffs' Claims

Grant Thornton USA argues that all of Plaintiffs' claims are extinguished because the peremptive period set forth in La. R.S. § 9:5604 has expired.[30]  In response, Plaintiffs argue that the three year peremptive period set forth in La. R.S. § 9:5604 does not apply to claims involving professional and fraudulent concealment;[31] any applicable prescriptive period triggered by the Plaintiffs' actual or constructive knowledge did not begin to run until November 24, 2013, the date of the Trustee's Report;[32] and that the March 1, 2013 filing of the Original Action against Grant Thornton International – an entity which Plaintiffs claim is solidarily liable with Grant Thornton USA – interrupted the running of prescription on all claims against Grant Thornton USA.[33]

In addition to these other timeliness arguments, Plaintiffs also assert that "it is suggested that the action is premature because it has not been reviewed by the Accountancy Board.  However, before this defense can be asserted, it is necessary that the out of state CPA firm submit to the

---

[30] *See*, R. Doc. 24-1, p. 10.

[31] R. Doc. 53, p. 11.

[32] R. Doc. 53, p. 11.

[33] R. Doc. 53, p. 12.

13

jurisdiction of the Louisiana Accountancy Board…."[34]  As noted above,[35] on January 30, 2017, the undersigned ordered the parties to submit supplemental memoranda addressing, *inter alia*, whether Plaintiffs were required to submit the claims asserted in this matter to a public accountant review panel and whether Plaintiffs did submit the claims asserted in this matter to a public accountant review panel.[36]  In its supplemental brief, Grant Thornton USA contends that "[t]he Court could dismiss this action because Plaintiffs have so far failed to commence the mandatory panel review process or the Court could dismiss the case on the grounds raised in the pending motion to dismiss, which include lack of personal jurisdiction, absence of privity, and the one year prescriptive and three year peremption periods for all claims against accounting firms."[37]  Because the undersigned recommends that Plaintiffs' claims against Grant Thornton USA should be dismissed as premature for failure to submit same to the accountant review panel, the undersigned does not reach the parties' arguments regarding the timeliness of Plaintiffs' claims under La. R.S. § 9:5604(A).

In its supplemental memorandum, Grant Thornton USA asserts that Plaintiffs were "required to submit their entire dispute with GT-US to an accountant review panel before filing this lawsuit."[38]  Grant Thornton USA contends that "Plaintiffs did not submit their claims for review by a Public Accountant Review Panel…" and explains that Grant Thornton USA "chose to wait to invoke the panel review process because it did not want to create grounds for Plaintiffs to argue it had compromised its personal jurisdiction defense via reliance on a Louisiana statutory

---

[34] R. Doc. 53, p. 19.

[35] *See*, *supra*, n. 3.

[36] R. Doc. 96.

[37] R. Doc. 97, p. 4.

[38] R. Doc. 97, p. 2.

procedure."[39]  Plaintiffs agree that "[t]his matter has not been submitted to the accountancy review panel."[40]   However, Plaintiffs argue that Grant Thornton USA has consented to this court's adjudication and/or waived its right to have the claims reviewed by the accountancy review panel because Grant Thornton USA filed a consent to CSG's Notice of Removal and "at least two memoranda in support of the multiple motions to dismiss and change venue."[41]   Plaintiffs additionally argue that, despite filing multiple status reports with this court, Grant Thornton USA "never once hinted that the proper jurisdiction of the claims was the accountancy review panel"[42] and that Grant Thornton USA was "required as a matter of law to 'notify the board of the intent to exercise the privilege' of having their claim reviewed by a panel" but failed to do so.[43]   Finally, Plaintiffs assert that review by the accountancy board is unnecessary because "unlike a lot of situations that arise between plaintiffs and their accountants, the conduct of GT USA has been thoroughly reviewed and analyzed in the Trustee Report."[44]

La. R.S. § 37:102 provides in pertinent part:

> A. All claims against certified public accountants or firms, other than claims validly agreed for submission to a lawfully binding arbitration procedure, shall be reviewed by a public accountant review panel established pursuant to R.S. 37:109.
>
> B. Review of a claim by a public accountant review panel shall not take place unless, within the time limitations provided for in R.S. 9:5604, a claimant files with the society a written request for review

---

[39] R. Doc. 97, p. 2.

[40] R. Doc. 98, p. 1.

[41] R. Doc. 98, pp. 1-2.  Although not dispositive of the issue, the undersigned notes that in its Notice of Consent, Grant Thornton USA consented to removal "with full reservation of all defenses, exceptions, or objections which may exist in its favor…."  R. Doc. 15, p. 1.  Similarly, in its opposition to Plaintiffs' Motion to Remand, Grant Thornton USA prefaced its brief with the statement that it was "specially appearing and without submitting to personal jurisdiction or waiving any defense…."  R. Doc. 28, p. 1.

[42] R. Doc. 98, p. 2.

[43] R. Doc. 98, p. 3 (citing *Manning Architects, APAC v. CNA Ins. Co.*, 2007 WL 1129357, at * 1 (E.D. La. April 16, 2007)).

[44] R. Doc. 98, pp. 3-4.

> of the claim and pays to the society a one hundred dollar filing fee to defray the society's administrative costs incurred in performing the duties imposed on it by this Part. The request for review shall set forth the name, surname, and domicile of all claimants and all defendants, shall contain a short, clear, and concise statement of the material facts that give rise to or constitute the claim, and shall designate both a mailing and a physical address for receipt of all notifications concerning the claim.

La. R.S. § 37:101(1) defines a "claim" as "any cause of action against a certified public accountant or firm, regardless of the legal basis of the claim, including but not limited to tort, fraud, breach of contract, or any other legal basis, arising out of any engagement to provide professional services…." That section goes on to define a "claimant" as "any person having an interest or right to assert a claim, whether for himself or on behalf of another." La. R.S. § 37:101(2).

Plaintiffs recognize that "GT USA is registered with the Louisiana State Board of CPA's to practice accounting in Louisiana."[45] "[T]he plain text of the Louisiana Accountancy Act covers any claims arising from any engagement to provide accounting services…." *Bickerstaff v. Bickerstaff*, 2016 WL 7450469, at * 4 (E.D. La. Dec. 28, 2016). "In fact, case law supports finding the scope as broad as the text implies, without limitations as to malpractice or accountant-client relationship." *Id.* at * 3 (collecting cases). *See also*, *Sigma Delta, LLC v. George*, 2008 WL 1744801, at * 1 (E.D. La. April 11, 2008) ("The term 'any engagement' supports Theriot's position that the review panel requirement applies even when the engagement was not with the party who eventually files suit. Omega's contention to the contrary is not consistent with [the] breadth of the statutes that comprise [the Louisiana Accountancy Act].").  Here, because Plaintiffs' claims arise out of Grant Thornton USA's preparation of the Initial and Restated Audits, the undersigned finds such claims against Grant Thornton USA are within the scope of La. R.S. § 37:102(A).

---

[45] R. Doc. 53, p. 15.  *See also*, R. Doc. 53-1.

Pursuant to La. R.S. § 37:105(A), "no action against a certified public accountant or firm or his insurer may be commenced in any court before the claimant's request for review has been presented to a public accountant review panel established pursuant to this Part and the panel has issued a written opinion."   Because the undersigned finds that Plaintiff's claims against Grant Thornton USA are within the scope of La. R.S. § 37:102(A), the undersigned finds that, absent a waiver of the statutory requirement, such claims must be dismissed as premature.  *See*, *Bickerstaff v. Bickerstaff*, 2016 WL 7450469, at * 4 (E.D. La. Dec. 28, 2016) ("Because the Court finds that plaintiff's claims are covered by [La. R.S. §§ 37:102 & 37:105], the Court dismisses plaintiff's claims against the Pailet defendants as premature."); *Sigma Delta, LLC v. George*, 2008 WL 1744801, at * 1 (E.D. La. April 11, 2008) ("In sum, the Court finds that the review panel requirements of the Louisiana Accountancy Act apply under these facts.  The claims against Theriot are therefore premature."); *In re Easterly Constr. Co., Inc.*, 408 BR 627, 631 (M.D. La. 2009) (granting motion to dismiss for failure to state a claim because "all the claims of the amended complaint against Purpera necessarily arose out of the debtor's engagement of him as its certified public accountant.  Accordingly, La. R.S. 37:105 required Easterly to take its claims to an accountant review panel for review before suing Purpera.").

La. R.S. § 37:105(A) explicitly provides that "[c]ompliance with the requirements of this Part [*i.e.*, the Chapter's review panel provisions] is not to be deemed optional."  Although the statute also contemplates waiver of use of the panel "[b]y written agreement of both parties," Plaintiffs do not argue that such joint written waiver occurred.  *See*, La. R.S. § 37:107 ("By written agreement of both parties, the use of the public accountant review panel may be waived").  Instead, Plaintiffs argue that Grant Thornton USA's filing of a consent to removal and memoranda in support of the instant Motion to Dismiss as well as its participation in the preparation of Joint

17

Status Reports indicate Grant Thornton USA's "desire to waive its right to have the claims reviewed by the accountancy review panel."[46]

In support of their position, Plaintiffs rely on *Moon Ventures, LLC v. KPMG, LLP*, 964 So. 2d 446 (La. App. 3. Cir. 2007). There, plaintiff filed suit against its accounting firm alleging economic loss and general damages due to defendant's negligent accounting practices. Defendant accounting firm answered the lawsuit and asserted several affirmative defenses; however, defendant did not file an exception of prematurity, and the matter was never presented to an accountant review panel. *Id*. at 448. Over six years after the lawsuit was filed, defendant filed a peremptory exception of prescription, arguing that plaintiff had failed to submit the claim to the review panel and that the time to do so had passed. *Id*. The court held that defendant "waived its right to require that the matter be presented to a review panel when it filed not only one but two answers in this litigation and participated in discovery without timely filing a dilatory exception of prematurity." *Id*. at 451.

The undersigned finds that the procedural posture of this matter is significantly different from that set forth in *Moon Ventures*. Here, Grant Thornton USA has not filed an answer to this suit, and, although this matter has been pending for some time, this litigation is still in its early stages.[47] Moreover, and contrary to Plaintiffs' assertion that the failure to seek review by the accountancy panel is a jurisdictional defect which should have been flagged in the parties' joint status reports, the undersigned considers such failure to be properly raised via a motion to dismiss

---

[46] R. Doc. 98, p. 2.

[47] This suit was removed to this court on February 18, 2014. R. Doc. 1. A Motion to Remand was filed on March 20, 2014. R. Doc. 17. The issues presented in the Motion to Remand were the subject of appeal in the Original Action. Following a ruling from the Fifth Circuit, the Motion to Remand in this action was denied on September 14, 2015. R. Doc. 34. Plaintiffs filed an opposition to the instant Motion to Dismiss on November 2, 2015. R. Doc. 53. A scheduling order setting forth, *inter alia*, discovery deadlines in this action was issued on December 16, 2016. R. Doc. 94.

under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  *See*, *In re Easterly Const. Co., Inc.*, 408 B.R. 627, 630 (M.D. La. Bankr. 2009) ("Purpera's argument that the debtor's failure to comply with La. R.S. 37:105 before filing suit deprived the court of jurisdiction misses the mark.  Lack of prior review by the accounting panel, assuming the statute applied to the plaintiff's claim, does not deprive the court of jurisdiction.  Rather the debtor's filing suit before requesting a review panel under R.S. 37:102 simply may mean that the complaint against Purpera fails to state a claim."). Pursuant to Fed. R. Civ. P. 12(h)(2), "[f]ailure to state a claim upon which relief may be granted…may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by a [motion for judgment on the pleadings]; or (C) at trial."  Accordingly, the undersigned disagrees that Grant Thornton USA's conduct thus far in this litigation constitutes a waiver of its right to seek review by the accountancy review panel, especially in light of the statutory language that such review is "not to be deemed optional" and that any waiver must be by written agreement of both parties.  La. R.S. §§ 37:105(A) & 37:107.

Finally, Plaintiffs argue that Grant Thornton USA was required as a matter of law to notify the State Board of Certified Public Accountants of Louisiana of its "intent to exercise the privilege afforded by this Section."  In support of this position, Plaintiffs cite La. R.S. § 37:94(A)(2), which addresses substantial equivalency for "an individual whose principal place of business is not in this state and who holds a valid active license as a certified public accountant from any state which the board or its designee has not verified to be in substantial equivalence with the licensure requirements of this Part…."[48]  For multiple reasons, the undersigned finds Plaintiffs' argument

---

[48] Plaintiff also relies on *Manning Architects, APAC v. CNA Ins. Co.*, 2007 WL 1129357 (E.D. La. April 16, 2007). In *Manning Architects*, defendant accounting firm filed a Motion to Dismiss and/or Motion for Summary Judgment arguing that plaintiff's suit should be dismissed pending resolution of the matter by a public accountant review panel. 2007 WL 1129357, at * 1.  Plaintiffs opposed the motion, arguing that defendants did not "have a right to bring the claim before the panel because they are Texas accountants and do not get protections afforded under Louisiana law." *Id*.  The court explained that defendants were entitled to the presumption of substantial equivalency set forth in La. R.S. § 37:94(A)(2) and that "[o]f course, the Defendants must seek verification from the Board, if they wish to bring

unpersuasive.  First, it does not appear that La. R.S. § 37:94(A)(2) applies to Grant Thornton, USA.  As noted above, there is no dispute that "GT USA is registered with the Louisiana State Board of CPA's to practice accounting in Louisiana."[49]   As a Louisiana licensee, Grant Thornton USA presumably would not be required to establish "substantial equivalency."  *See*, La. R.S. § 37:77 (setting out requirements for CPA firms to be permitted to practice in Louisiana).  Moreover, La. R.S. § 37:94 itself indicates that notification to the board is not always required.  *See*, La. R.S. § 37:94(A)(2) ("Notwithstanding any other provision of law, the board, in accordance with the Administrative Procedure Act, may adopt a rule allowing an individual who offers or renders professional services, whether in person, by mail, telephone, or electronic means, under this Section to be granted practice privileges in this state without giving notice to the board or paying any fee.").[50]

Because the undersigned finds that Plaintiffs' claims fall within the scope of La. R.S. § 37:102(A) and further finds that no waiver of this statutory requirement has occurred, the undersigned recommends that Plaintiffs' claims against Grant Thornton USA be DISMISSED as premature.[51]

---

Plaintiff's action before a review panel."  *Id*.  There was no discussion in that court's ruling regarding whether defendant was a Louisiana licensee.

[49] R. Doc. 53, p. 15.  *See also*, R. Doc. 53-1.

[50] The undersigned finds Plaintiffs' additional argument that review by the accountancy board is unnecessary in light of the Trustee's Report unconvincing.  *See*, R. Doc. 98, pp. 3-4.  Pursuant to La. R.S. § 37:119, the panel "shall have the *sole duty* to express its expert opinion as to whether or not the evidence supports the conclusion that the defendant or defendants acted or failed to act within the appropriate standards of care."  Emphasis added.  Moreover, the undersigned finds Plaintiff's characterization that "the facts are uncontested, based upon the Restated Audits, that GT USA 'failed to comply with the appropriate standard of care'" to be contrary to the purported basis of this lawsuit, *i.e.*, to determine, *inter alia*, whether Grant Thornton USA breached its duty of care.

[51] Plaintiff asserts that "[t]o the extent that the right to have the accountancy review panel review the claims has not been waived by GT USA, the Louisiana Funds request that the proceeding against GT USA be stayed pending a review by the panel."  R. Doc. 98, p. 5.  Plaintiffs provide no authority for such a stay, and at least one Louisiana district court has denied such a request where plaintiff had not already presented such claims to a panel for review.  *See*, *Barrack Children's Irrevocable Trust v. Pailet*, 2012 WL 2513682, at * 2 (E.D. La. June 27, 2012) ("[D]ecisions to grant a stay generally occurred when there was a panel or other ongoing administrative proceedings.  Because Plaintiffs have not presented the claims to the accountant review panel, Plaintiffs have not shown good cause for staying the instant

### D.  Defendants' Additional Arguments

Because the undersigned recommends dismissing Plaintiffs' claims against Grant Thornton USA as premature for failure to submit same to the accountancy review panel, the undersigned does not reach Defendants' additional arguments failure to state a claim under Rule 12(b)(6) or failure to join an indispensable party.

## III.   CONCLUSION

For the reasons set forth herein, it is the recommendation of the undersigned that the Motion to Dismiss[52] be **GRANTED** dismissing all claims in this matter.

Signed in Baton Rouge, Louisiana, on February 21, 2017.


**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

proceeding.") (internal citations omitted).   Accordingly, the undersigned also recommends DENYING Plaintiffs' alternative request for a stay.

[52] R. Doc. 24.